# Exhibit 3 (Part 8)

 

15 Tech Valley Drive
2nd Floor, Suite 3
East Greenbush, New York 12061

March 10, 2009

Ralph R. Van Deventer Jr.



Case #: 74518
WWID#: 10900

Dear Ralph R. Van Deventer Jr:

We are writing to you concerning your Long Term Disability (LTD) application which was
previously approved from 3/9/2009 through 4/5/2009. It has now been determined that you can
work on a trial basis, which is known as "rehabilitation employment". When you are considered
in a rehabilitative status, the first $250 of your monthly rehabilitative income will not affect your
LTD Plan benefit. For any monthly rehabilitative income over $250, 60¢ of every $1.00 will be
used to reduce your LTD Plan payment. Your total disability income from all sources cannot be
more than you earned before you were disabled. If it is, your LTD Plan payments will be
reduced accordingly. Reed Group will continue to monitor your LTD status during this
rehabilitative period. Please notify Reed Group immediately in the event this rehabilitative
employment status changes and you are unable to work.

We also request that during the time period in which you are considered in "rehabilitation
employment" that you submit copies of your pay stubs to Reed Group in the enclosed self-
addressed envelope to ensure an accurate calculation of your LTD benefits.

LTD benefits are calculated as follows:

| | |
|---|---|
| Monthly Pre-Disability Earnings | $2,923.22 |
| Scheduled LTD Benefit | |
| Less Social Security Benefits | $ N/A |
| Less LTD Rehab Income | $1,268.68 |
| LTD Benefit | $1,654.54 |

You have a right to appeal this decision. A request for an appeal must be submitted in writing
and signed by you or a duly authorized representative. It must state specifically the reason why
you are requesting a review and must be filed with Reed Group no later than one hundred
eighty (180) days from your receipt of this notice. You must include any new facts or new
medical information you consider important for the appeal. Upon request, you will be provided
with copies of all documents relevant to your claim.

Confidential
Admin Reg 00429

Reed Group's Appeal Administrator will provide you with a full and fair review of your claim and this denial decision. The review on appeal will take into account all comments, documents, records and other information submitted that relates to the claim, even if not previously submitted or not considered in the initial decision. The review on appeal will be without deference to the initial decision and it will be conducted by the Appeals Administrator, who was not involved in this initial decision.

The decision of the Appeals Administrator will be made within forty-five (45) days after the request for review is received, unless special circumstances require an extension of time for processing the review. Should an extension be required, you will be notified in writing prior to the expiration of the forty-five (45) day period. Where Reed Group seeks additional information from you; you will have forty-five (45) days to provide it. Reed Group will notify you of its decision within forty-five (45) days of the date you provide that information or if you fail to provide it, within forty-five (45) days of the date your period for furnishing the information expires.

A request for appeal should be submitted to:

<div style="text-align:center">

Reed Group
ATTN: Appeals Department
10155 Westmoor Drive
Suite 210
Westminster, CO 80021

</div>

All the facts and circumstances of your case will be thoroughly reviewed, should you exercise your right to appeal the denial of your claim. If you follow the above procedures and your appeal is denied, you have the right to a second level appeal and will be advised of those instructions at that time.

If you have any questions or concerns regarding your claim, please call us at (866) 829-8861.

Thank You,


Alexandria Falk
Reed Group


cc:      Corporate Benefits
         Human Resources

Confidential
Admin Rec. 00430



15 Tech Valley Drive
Suite 3, Second Floor
East Greenbush, NY 12061

March 4, 2009

Ralph R. Van Deventer Jr.

AMENDED

Case #: 74518
WWID#: 10900

Dear Ralph R. Van Deventer Jr.:

Johnson & Johnson has contracted with Reed Group to review and monitor Short Term Disability (STD) cases. Your disability case, beginning on 09/08/2008, was referred to us for case management on 09/09/2008.

Based upon your diagnosis and/or additional medical documentation provided by your treating health care provider, the status of your case is as follows:

| 09/08/2008 | 03/08/2009 | Approved ------ Disability Duration |
| 09/08/2008 | 11/30/2008 | Approved ------ FMLA |
| 03/02/2009 | 03/08/2009 | Approved ------ Modified Work |

Reed Group will continue to review your claim on an ongoing basis to determine the potential for an earlier release to return to work, with or without temporary restrictions. Therefore, if it is determined by Reed Group that you can return to work, in any capacity, prior to the last authorized date of your disability as indicated in this letter you are expected to comply in order to continue receiving STD benefits.

Fitness for Duty Requirements to return to work: You are required to provide a release to return to work from your provider. Failure in providing this notice may delay restoration to your job.

Please be advised that Family Medical Leave (FMLA) and/or State Family Medical Leave (SFML) does run concurrent with this medical leave. Your FMLA is tracked on a 12 month rolling forward calendar year.

The requested leave will be applied toward your FMLA and/or SFML entitlement and is subject to review and/or recertification at a minimum of every thirty (30) days.

Should you require an extension or will not return to work on or before the end of the authorization period noted above, it is your responsibility to ensure that you and/or your health care provider submits supporting objective medical documentation to Reed Group five (5) days prior to the last authorized date of disability. This information will be reviewed for an extension of STD benefits. A few examples of this documentation are:

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061| 866-829-8867| Fax: 518-880-6610
JJ116 - STD-FMLA Approval Ltr.doc                Page 1 of 2

Confidential
Admin Reg. 00431
74518

 

- Physician office/progress notes
- Diagnostic Test Results (X-rays, MRI, etc.)
- Laboratory Results
- Physical Therapy notes
- Medical clearance from disability

If you are returning to work on or before the end of the authorization period noted above, you will need to provide Reed Group with written documentation of your Release to Work from your health care provider prior to the last authorized date of disability. As a reminder, Reed Group must receive your return to work release and coordinate your return with the Company prior to your actual return to the worksite.

In addition, it is also important to note that per the Company policy, if an employee does not return to work within three (3) business days of the end of the approved time off, the Company may determine that the employee has voluntarily resigned and consider the employee's employment to be terminated.

Please call Reed Group toll free at 866-829-8861 if you have any questions or concerns.

Thank you,

Cristina Teta
Reed Group

cc: J&J OHN
    J&J Supervisor

02/24/2009 09:23 7325711937 STROUSE/LOPANO PAGE 01

2/23/2009 1:54:11 PM PAGE 3/003 Fax Server

**Part V. Safe Operation of a Company Vehicle (to be completed by Health Care Provider, if applicable)**
Individuals who operate a company vehicle (Sales Representative, forklift operators, etc.) are considered to be in a Safety Sensitive position. If the above named individual is required to operate a company vehicle as part of their responsibilities, please complete this section.

Please check one:

_____ The above named individual's medical condition/status does not interfere with his/her ability to operate a company vehicle.

___✓___ The above named individual's medical condition/status does not interfere with his/her ability to operate a company vehicle with the accommodations/ restrictions described below

_____ The above named individual's medical condition/status does interfere with his/her ability to drive and cannot operate a company vehicle at this time.

Accommodations/Restrictions including duration: _Drive less than 2 hours_

**Part VI. Use of Fitness Center**

Use of the Fitness Center Johnson & Johnson sponsors a health promotion program for employees. One component of this program is an exercise program that includes aerobic, strength and/or flexibility training.

1. This employee may participate in aerobic, strength and flexibility training without restrictions:

[X] YES [ ] NO, then please complete next statement

2. This employee may participate in aerobic, strength and flexibility training with the following restrictions:

_____

_____

**Part VII. Medical Provider Information**

Attending Physician's Name (Please Print) IRVING D. STROUSE, M.D., P.A.

Attending Physician's Phone Number: ███████

Attending Physician's Signature: _____

Date: 2/23/09

## Please fax to 518-880-6610 when complete

Reed Group | 15 Tec Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061 | 866-829-6361 | Fax: 518-880-6610

Release to Work Form - Page 2 of 2
JJ042

received on 2/24/2009 9:22:11 AM [Eastern Standard Time]

Confidential
Admin Rec. 00433

 

## Release to Work Form

**Instructions:** Prior to returning to work from a Short Term Disability (STD) Leave with temporary **restrictions**, you **MUST** fax this form to Reed Group at 518-880-6610 for approval.

If you have any questions, please call 866-829-8861.

| Part I - To be completed by Employee: | |
|---|---|
| Employee Name: (Please Print) | Worldwide ID #: |

**Part II - To be completed by Medical Provider – Please do NOT list diagnosis or nature of illness/injury**

I certify that this employee is medically fit to return to work on (date): 3 / 2 / 09

The employee's medical condition ☒ **will** (Please complete Part III) OR ☐ **will not** (skip to Part V) continue to impact his/her ability to perform all of the regular functions of his/her position.

If temporary accommodation(s) are necessary, the projected full duty release is (date): _____

**Part III - Abilities - To be completed by Medical Provider**

| Identify appropriate work level for employee's condition: | ACTIVITY | NONE | OCCASIONALLY (1 to 3 hours) | FREQUENTLY (3 to 6 hours) | CONTINUOUSLY (6 + Hours) |
|---|---|---|---|---|---|
| ☒ **SEDENTARY WORK** – Sitting most of the time; brief periods walk/stand; lift up to 10 lbs. occasionally | Stand/Walk | ☐ | ☒ | ☐ | ☐ |
| | Sit | ☐ | ☐ | ☒ | ☐ |
| ☐ **LIGHT WORK** – Significant degree of walking/standing; some sitting; lift - up to 20 lbs. occasionally | Drive | ☐ | ☒ | ☐ | ☐ |
| | Bend | ☐ | ☒ | ☐ | ☐ |
| ☐ **MEDIUM WORK** – Lift up to 50 lbs. occasionally; 20 lbs. frequently; 10 lbs. constantly | Twist | ☐ | ☒ | ☐ | ☐ |
| | Squat | ☐ | ☒ | ☐ | ☐ |
| ☐ **HEAVY WORK** – Lift up to 100 lbs. occasionally; 50 lbs. frequently; 20 lbs. constantly | Climb | ☒ | ☐ | ☐ | ☐ |
| | Grasp | ☐ | ☐ | ☒ | ☐ |
| ☐ **VERY HEAVY WORK** – Lifting in excess of 100 lbs. occasionally; 50 lbs. frequently; 20 lbs. constantly | Push/Pull | ☐ | ☒ | ☐ | ☐ |
| | Reach | ☐ | ☐ | ☒ | ☐ |

**Part IV - Temporary Restrictions**

This employee may return to work with the following temporary restrictions:

| RESTRICTION | DATE RESTRICTION BEGINS | DATE RESTRICTION ENDS |
|---|---|---|
| Work ½ hrs/day | 3/2/09 | 4/6/09 |

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061 | 866-829-8861 | Fax: 518-880-6610

Release to Work Form - Page 1 of 2
JJ042

received on 2/24/2009 9:22:11 AM [Eastern Standard Time]

Confidential
Admin Rec. 00434

02/24/2009  09:23      7325711937                    STROUSE/LOPANO                      PAGE  03

2/23/2009 1:54:11 PM  PAGE   1/003    Fax Server

# FAX

**To:** Dr. Irving Strouse
Company:
Fax: 417325711937
Phone:

**From:** Cristina Teta, RN
Fax:
Phone: 866-829-8861, ext. 8692
E-mail: cteta@rgl.net

## NOTES:

Dear Dr. Strouse:

Attached is a return to work form for Ralph Vandeventer. His worksite
will accommodate him working 4 hours a day in a sedentary position.
Please fill out the attached form if you feel this patient is able to
work 4 hours a day, sedentary position at the worksite. Please
include a start date (3/2/09) and an end date to the restrictions.

Thank you for your assistance.

Sincerely,

Cristina Teta, RN

Date and time of transmission: Monday, February 23, 2009 1:53:26 PM
Number of pages including this cover sheet: 03

received on 2/24/2009 9:22:11 AM [Eastern Standard Time]

Confidential
Admin Rec. 00435

Feb 16 2009 10:47AM ACCESS MEDICAL     7344251042     p. 1



P.O. Box 510837
Livonia, Michigan 48151

Phone: 800-375-0270
Fax:    734-425-1042
Email: AccessEvaluation@aol.com

## Facsimile Transmittal

**TO: MARIA WALLACE /
MEGAN MCCRAE**

Company: Reed Group

Telephone:
Fax: #1   518-880-6610 (JNJ Only)

    #2  518-283-8517

Date: February 16, 2009
Number of pages including fax cover: 10

**FROM:**

*Access Medical Evaluations*

Phone: 800-375-0270
Fax:  734-425-1042

**Urgent:\_\_\_\_**         **For Review:\_\_x\_\_**         **Please Comment:**

**MESSAGE:**

  \_\_X\_\_   NARRATIVE REPORT ON \_\_**RALPH VAN DEVENTER**\_\_\_\_
        (SIGNATURE PAGE OF PHYSICAN ATTACHED IF NECESSARY)

  \_\_X\_\_ INVOICE

  _____ OTHER

SINCERELY,
ACCESS MEDICAL EVALUATIONS, INC

The information contained in this facsimile is confidential. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the agent or employee responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U. S. Postal Service. Thank you.

Confidential
Admin Rec. 00436



**ACCESS MEDICAL EVALUATIONS, INC.**
P.O. Box 510837
Livonia, Michigan 48151
Tel: (800) 375-0270
Fax: (734) 425-1042

**Customer:**   Reed Group, Ltd.                  **INVOICE:** 8066
**Account:**    Johnson & Johnson                  **Date:** 02/16/09
**Address:**    P.O. Box 909
**City/State/Zip:** Broomfield, CO 80038-0909
**Attn:**       Maria Wallace

| Date of Exam | Description | Unit Price | TOTAL |
|---|---|---|---|
| 02/12/09 | Case #:       10900<br>Claimant:    Ralph Van Deventer Jr.<br>Physician:   Kenneth Kutner, PhD<br>Specialty:    Neuropsychology | | $2550.00 |
| | | | |
| | **\*\*DUE UPON RECEIPT\*\***<br>*A late charge of $35.00 will be charged on any balance not paid<br>within 45 days of original invoice.* | TOTAL | $2550.00 |

Please submit payment to:
EIN: 20-1210825                  Access Medical Evaluations, Inc.
                                 P.O. Box 510837
                                 Livonia, Michigan 48151

*Thank You*

Confidential
Admin Rec. 00437

# Kenneth C. Kutner, PhD, ABPP-CN

Fellow of National Academy of Neuropsychology
Diplomate in Clinical Neuropsychology

*Other Offices*
339 Princeton-Hightstown Road
Cranbury, New Jersey 08512
◊    ◊    ◊    ◊    ◊
3000 Atrium Way, Suite 100
Mount Laurel, New Jersey 08054

*New Jersey License #02135*
*New York License #13643*

*Correspondence to Englewood Office*
Bergen Neuropsychology Group
440 Curry Avenue Suite B
Englewood, NJ 07631
Phone 201-894-0050
Fax   201-569-9326

## NEUROPSYCHOLOGICAL EVALUATION

**NAME:**                    Ralph Van Deventer
**DATE OF BIRTH:**
**DATE OF EVALUATION:**      02/12/09

**REFERRAL:**

Ralph Van Deventer is a ● year-old, right-handed, male who was evaluated in order to determine whether he is able to return to his position as a Senior Compliance Analyst. Specific referral questions were also provided.

**HISTORY:**

Mr. Van Deventer has been out of work, on short-term disability since September of 2008. He indicated that he is unable to work due to worsening back pain and chronic left Achilles tenosynovitis. Back pain has been occurring since he sustained an injury in the Army 25 years ago. Mr. Van Deventer reported that his back pain ranges from 7-8 on the classic 1-10 pain scale. Achilles area pain was noted to be constant and at a level 6. Mr. Van Deventer reported that he does not experience cognitive problems at this time.

Mr. Van Deventer has received physical therapy for his back pain. He has been utilizing a plastic foot brace on his left foot in order to support his ankle and Achilles tendon. Mr. Van Deventer reported that he developed anxiety, worrying about whether he will be able to recover and return to his normal work and home activities. He was seen by psychiatrist, Dr. Rajput who placed him on Clonazepam and Lexapro. Dr. Rajput discontinued Lexapro and placed him on Effexor. Mr. Van Deventer receives monthly medication checks but has not received psychotherapy.

Background educational, vocational, and medical history will follow. Mr. Van Deventer was born in New Jersey. Educational history is negative for learning weaknesses and special education. After graduating high school in 1977, he entered the US Army. Following basic training, he was assigned to finance (army payroll). Mr. Van Deventer volunteered to for ski patrol duty at an Army recreational facility. During training, he fell and injured his back. He elected against receiving any evaluation or treatment, as he was concerned he would be re-assigned. Following service in the Army,

Confidential
Admin Rec. 00438

Ralph Van Deventer                                                   Page 2

he was discharged home. Mr. Van Deventer attended college on a part time basis for approximately 2 years. He has been working for a pharmaceutical company for the past 20 years. He was working as a Senior Compliance Analyst before going out on disability. Mr. Van Deventer related that his position focuses on quality assurance. He indicated that he has desk job in which he reviews preproduction records for compliance. Medical history is negative for head trauma, seizures, and prior anxiety and depression.

## REVIEW OF MEDICAL RECORDS:

A September 25, 2008 Attending Physician's Statement by orthopedic surgeon, Irving Strouse, MD was reviewed. Primary diagnosis was noted to be Tenosynovitis of the left ankle. Secondary diagnosis was Lumbar Sprain. Treatment was noted to be Cam Walker for left ankle and physical therapy for his back. It was noted that the patient was unable to work.

An October 17, 2008 note by Irving Strouse, MD was reviewed. It was noted that the patient was still having difficulty with both his lumbar spine and Achilles tendon. Plan was to continue physical therapy and continue patient out of work.

A November 10, 2008 note by Irving Strouse, MD was reviewed. It was noted that the left Achilles tendon was improved. However, there was still significant increased left sciatica.

A November 13, 2008 note by Irving Strouse, MD was reviewed. Diagnosis was left Achilles tendon and lumbar strain. It was noted that the patient should remain out of work until 12/1/08.

A November 24, 2008 note by Irving Strouse, MD was reviewed. It was noted that the MRI revealed disc bulge at L4-5 and L3-4 with superimposed disc herniation along the right neural foramina at L4-L5. Diagnosis was: Achilles tenosynovitis and Lumbar Sprain L4 and L5. Dr. Strouse noted there should be no work until 12/29/08.

A December 22, 2008 note by Irving Strouse, MD was reviewed. It was noted that there should be no work for one month. The patient was to continue with physical therapy and was being referred to a pain management specialist to determine if epidural blocks are indicated.

A January 13, 2009 note by psychiatrist, Zulfiqar Rajput, MD was reviewed. It was noted that the patient had been seen since 09/17/08. Dr. Rajput related that the patient was suffering with depression and anxiety. Dr. Rajput noted that the patient is under his care and is taking medication.

A January 14, 2009 orthopedic evaluation by Norman Heyman, MD was reviewed. Presenting complaints included back pain and left foot and ankle pain. Diagnosis was: lumbosacral sprain and strain; lumbar syndrome, mechanical in nature; and degenerative Achilles tendinitis on the left side.

Confidential
Admin Rec. 00439

Ralph Van Deventer

Page 3

## PROCEDURES:

b Test
Writing Sample
Trail Making Test
Geometric Shapes
Dot Counting Test
Digit Vigilance Test
Boston Naming Test
Review of Medical Records
Symbol Digit Modality Test
Neurobehavioral Status Exam
California Verbal Learning Test
Lateral Dominance Examination
Rey Complex Figure with Recall
Multilingual Aphasia Examination
Wechsler Adult Intelligence Scale- III
Wechsler Memory Scale-III: Logical Memory
Minnesota Multiphasic Personality Inventory-2 RF

## NEUROPSYCHOLOGICAL FINDINGS:

### Neurobehavioral Status Examination

Mr. Van Deventer was driven to the evaluation by his brother-in-law. He was ambulatory and wore a rigid plastic cast on his left foot. Mr. Van Deventer was alert and maintained satisfactory arousal throughout the evaluation. Speech was clear, fluid, and goal directed. Responses to questions were sequitor and well organized. Orientation to time, place, and person was intact.

Mr. Van Deventer quickly developed rapport and maintained it throughout the assessment. He was not guarded or rigid in responding to questions. The purpose of the current evaluation was explained to him. Specifically, that the evaluations was scheduled to assess his current psychological and cognitive status in regards to work capacity.

Mr. Van Deventer indicated that he does not have cognitive problems, but that does experience significant back and ankle pain during periods of extended sitting. He indicated that he feels he could likely work part-time from home. Mr. Van Deventer related that his back and ankle pain limit his ability to make one hour commutes to and from the work place.

Mr. Van Deventer indicated that he is anxious about the whether or not he will experience recovery in his back and Achilles tendon. Specifically, he related being worried that he might not be able to play with his children (ages 5,6,9,15), pick them up, or return to helping friends and family members with home repairs. Mr. Van Deventer

Confidential
Admin Rec. 00440

Case 3:10-cv-06344-PGS-DEA Document 14-14 Filed 05/13/11 Page 14 of 55 PageID: 883

Ralph Van Deventer                                                          Page 4

indicated that he does not have hobbies but enjoys doing painting, plumbing, and completing home projects for friends and family.

Mood was essentially normothymic. Clinical interview did not reveal evidence of marked anxiety, panic, or phobias. There was no evidence of marked sadness, anhedonia, psychomotor retardation, or other features of a major depression. There was evidence of dysthymia and what appeared to be features of apparently long standing features towards social isolation. Affect was not found to be constricted in regards to range or amplitude.

Mr. Van Deventer indicated that he sleeps much better on a recliner due to his back and ankle conditions. He reported that that he has no specific problems either falling or remaining asleep. He does not experience nightmares, phobias, or panic attacks. However, he was found to have anticipatory anxiety regarding his physical condition.

Mr. Van Deventer maintained satisfactory composure during the evaluation. There was no evidence of irritability or decreased frustration tolerance. This was evident during discussion of his physical condition as well as during administration of more arduous cognitive tasks. There was also no evidence of formal thought disorder, ideas of reference, or any other psychotic manifestations. Reality contact was fully intact.

### MMPI-2 RF

Mr. Van Deventer was administered the Minnesota Multiphasic Personality Inventory-2 in order to objective psychometric information. Validity scale results follow in t-score format: VRIN 63; TRIN-r 50; F-r 70; Fp-r 42; Fs 42; FBS-r 70; L-f 66; and K-r 48. Elevations on several of the validity scales indicate that his profile needs to be interpreted with caution. Clinical scale results follow, also in t-score format: EID 72; THD 48; BXD 43; RCd 64; RC1 59; RC2 80; RC3 47; RC4 43; RC6 61; RC7 48; RC8 47; and RC9 36. His pattern revealed significant malaise as well as feelings of stress and worry. Ruminations over his health were apparent. Mr. Van Deventer's pattern was consistent with social avoidance and low positive emotion.

### Executive Skills

The Trail Making Test (TMT) was administered. Part A of the task directed Mr. Van Deventer to sequence a series of numbers, which were dispersed about a page. This basic task was completed in 29 seconds converting to a t-score of 46. This is a non-impaired time for basic visual scanning. Part B of the task increased in complexity. Here, Mr. Van Deventer was directed to sequence both numbers and letters while alternating between them. This more complex series was completed in 60 seconds, converting to a t-score of 53. Mr. Van Deventer's time in quickly alternating between two sets of stimuli also fell within the non-impaired range.

The Wechsler Adult Intelligence Scale-III (WAIS-III) was administered in order to provide a measure of general intellectual functioning. Full Scale IQ of 100 converted to a t-score of 46 and placed Mr. Van Deventer's overall intellectual capacity within the

Confidential
Admin Rec. 00441

Ralph Van Deventer

Page 5

average range. Verbal IQ of 98 converted to a t-score of 44 and fell within the average range. Performance IQ of 104 converted to a t-score of 49 and fell within the average range. The resulting VIQ-PIQ differential of 2 points was noncontributory. Verbal Comprehension Index score of 100 converted to a t-score of 47. The Perceptual Organizational Index score of 101 converted to a t-score of 47. Working Memory Index of 95 converted to a non-impaired t-score of 42. Processing Speed Index of 103 converted to a non-impaired t-score of 51. Vocabulary subtest score of 11 converted to a t-score of 52. Similarities subtest score of 9 converted to a t-score of 43 and indicated satisfactory verbal abstract reasoning. Arithmetic subtest score of 10 converted to a t-score of 45, demonstrating satisfactory verbal arithmetic reasoning. Digit Span subtest score of 9 converted to a t-score of 44 and indicated adequate capacity for immediate rote recall of forward and backward numerical spans. Information subtest score of 10 converted to a t-score of 45, demonstrating satisfactory general fund of knowledge. Letter Number subtest score of 9 converted to a t-score of 43. Picture Completion subtest score of 8 converted to a t-score of 39. Coding subtest score of 11 converted to a t-score of 54 and revealed psychomotor speed to be within the intact range. Block Design subtest score of 13 converted to a t-score of 57, demonstrating satisfactory capacity on this task of visuo-spatial processing. Matrix Reasoning subtest score of 10 converted to a t-score of 47 and indicated non-impaired nonverbal reasoning. Symbol Search subtest score of 10 converted to a t-score of 48.

Response pattern analysis was obtained through administration of the b Test and the Dot Counting Test (DCT). The b Test is a letter recognition and discrimination task. On the b Test, his E-score of 33.8 was below the Cutoff score of $\geq$ 90. The DCT measures time in counting ungrouped and grouped dots on a set of stimulus cards. On the DCT, his Mean UG Time was 6.3 seconds with the Mean G Time being 2.8 seconds. His DCT E-Score of 9.1 was below the Cutoff Score of $\geq$ 20. Mr. Van Deventer's pattern on these measures of response bias reflected satisfactory task effort.

### Memory

The California Verbal Learning Test was administered in order to assess memory for recall of rote verbal information. On the first trial, 7 of 16 items were recalled. This converted to a t-score of 48, reflecting non-impaired initial encoding of verbal stimuli. A maximum of 10 items were learned throughout the five presentations of the list. Learning curve was 7/8/8/8/10. Overall recall during the five trials yielded a t-score of 39, which is within the mild range of impairment. The interference trial contained 6 of the newly presented 16 items and converted to a z score of 0. Short Delay Free Recall (SDFR) of the first list contained 7 items, converting to a t-score of 36. Long Delay Free Recall (LDFR) contained 9 items, converting to a t-score of 44. The Recognition trial contained 10 of the 16 items. The pattern of LDFR being superior to SDFR and the Recognition trial score of 10 reflected psychogenic factors.

Verbal Memory for more complex stimuli was measured with administration of the Logical Memory subtest of the Wechsler Memory Scale-III (WMS-III). This psychometric procedure encompasses oral presentation of two narrative stories for

Confidential
Admin Rec. 00442

Ralph Van Deventer

Page 6

immediate and subsequent recall. Mr. Van Deventer obtained a scale score of 13 on the Short Term trial, converted to a t-score of 60, indicating above average capacity. On the Long Term trial, Mr. Van Deventer obtained a scaled score of 15, which converted to a t-score of 67, demonstrating above average consolidation capacity.

Visual memory was measured with graphic reproductions of the Complex Rey Figure. On this task, Mr. Van Deventer was initially directed to reproduce the design with the model being present. Mr. Van Deventer's Short Term (22.5/36) trial t-score of 57 demonstrated intact capacity. The Long Term trial (19.5/36) t-score of 54 revealed intact consolidation capacity.

### Language

There was no evidence of dysarthria, dysprosody, or dysphonia. Capacity to generate semantic labels to pictures was intact on the Boston Naming Test (t-score: 61). Verbal fluency was also intact on FAS (t-score of 41). Comprehension of multistep commands as well as task directions was found to be intact. Writing Sample revealed no evidence of dysgraphia or any impairment within the mode of written expression.

### Attention/Concentration

Mr. Van Deventer obtained a subtest score of 9 on Digit Span. A subtest score of 10 was evident on Arithmetic. Mr. Van Deventer was administered the Digit Vigilance Test (DVT). His time of 456 seconds converted to a t-score of 39. His error score of 2 converted to a t-score of 58. Trail Making Test Part A was intact. Mr. Van Deventer completed the entire assessment without a rest break.

### Visuo-Spatial

Block Design subtest score of 13 demonstrated above average capacity. Reproduction of the Complex Rey Figure (36/36) did not reveal evidence of constructional dyspraxia. On the WAIS-III, Mr. Van Deventer's Perceptual Organization Index score was intact at 101.

## CONCLUSIONS:

Neuropsychological Evaluation revealed that Mr. Van Deventer's neurocognitive skills are intact. His speed of information processing and psychomotor speed fell within the non-impaired range. Verbal and non-verbal reasoning was intact. Language assessment revealed expressive and receptive skills to be intact. Attention/Concentration was found to be non-impaired. Visuo-spatial skills were also intact. Current examination revealed non-impaired memory for complex verbal information as well as visual stimuli. Isolated weakness was evident with verbal encoding, short-term recall for basic information and on DVT time. However, analysis of his intra as well as inter task pattern revealed these findings were secondary to psychogenic etiology.

Confidential
Admin Rec. 00443

received on 2/16/2009 9:51:43 AM [Eastern Standard Time]

Ralph Van Deventer

Neurobehavioral Status Examination and test results from the Minnesota Multiphasic Personality Inventory-2 RF revealed that Mr. Van Deventer has a Dysthymic Disorder. He pattern indicates an apparent long-term propensity towards social isolation and social avoidance. Ongoing pain and physical limitations from his back and Achilles tendon conditions resulted in an exacerbation of his dysthymia as well as development of anticipatory anxiety regarding his potential for recovery.

## DIAGNOSIS:

DYSTHYMIC DISORDER

## REFERRAL QUESTIONS:

1. Neuropsychological Evaluation revealed that Mr. Van Deventer has a long standing Dysthymic Disorder, which was exacerbated by ongoing pain and physical limitations from his back and Achilles tendon conditions.

2. Mr. Van Deventer did not demonstrate emotional decontrol. His demonstrated appropriate affect throughout the evaluation and did not lose composure at any time.

3. Current examination did not reveal evidence of neurocognitive impairment in attention/concentration, reasoning, intellect, speed of information processing, language, memory or visuo-spatial functioning. Isolated impaired scores were evident and deemed secondary to psychological factors. Mr. Van Deventer did well on response-bias (effort) tests.

4. Mr. Van Deventer did not demonstrate any reality testing impairments. There was no evidence for formal thought disorder, ideas of reference, or any other psychotic manifestations on neurobehavioral status exam. Similarly, there was no evidence of reality testing impairment on the MMPI-2 RF.

5. Evaluation revealed no clinically significant behavioral impairment. Mr. Van Deventer was friendly, pleasant, and maintained satisfactory rapport throughout the evaluation. He was not verbally or physically agitated. Rather, he maintained a positive composure during his history taking as well as during administration of more arduous neurocognitive tasks.

6. Mr. Van Deventer is psychologically and cognitively capable of performing an 8-hour-per day job.

7. Current evaluation revealed intact cognitive skills and a Dysthymic Disorder. Mr. Van Deventer's dysthymia and anticipatory anxiety do not reach the level of functional impairment, which would prevent him from working full time in his position as a Senior Compliance Analyst. Regarding treatment, it is this examiner's opinion that Mr. Van Deventer is not receiving optimal treatment for his Dysthymic Disorder and anxiety. Treatment appears to consist solely of monthly medication checks and pharmacotherapy.

received on 2/16/2009 9:51:43 AM [Eastern Standard Time]

Confidential
Admin Rec. 00444

Feb 16 2009 10:49AM  ACCESS MEDICAL          7344251042          p.10

02/14/2009  15:04  +                    FAXSERVER                    PAGE  09/09

Ralph Van Deventer                                           Page 8

Clearly, Mr. Van Deventer requires individual psychotherapy on a weekly basis. It is recommended that he receive psychotherapy utilizing cognitive behavioral techniques, which would focus on a) assisting him in coping with his physical condition b) reducing his dysthymia and c) reducing anticipatory anxiety through development of more effective coping strategies.

8. Mr. Van Deventer is seen to be capable of returning to work without limitations or restrictions for cognitive and/or psychological factors.

9. No applicable.

Kenneth C. Kutner, PhD, ABPP-CN
Board Certified Neuropsychologist
Assistant Professor of Neuropsychology
Weill Cornell Medical School

Confidential
Admin Rec. 00445

 

15 Tech Valley Drive
2nd Floor, Suite 3
East Greenbush, New York 12061

February 12, 2009

Ralph R Van Deventer Jr
905 Forge Lane
Toms River, NJ 08753

Case #: 74518
WWID#: 10900

Dear Ralph Van Deventer Jr:

We have received your completed application on 02/06/2009 for Long Term Disability (LTD) benefits under the Johnson & Johnson Choices LTD Disability Plan.

We will begin our review of your records in an effort to make a case determination. In the event we have questions, we may contact you or your healthcare provider to obtain additional information.

Upon completion of our review of your case, we will notify you and Johnson & Johnson of our determination.

Please call (866) 829-8861 if you have any questions or concerns.

Thank You,


Reed Group


Cc:   Corporate Benefits
      Human Resources

Confidential

FEB-10-2009 03:13 PM   Pain Institute NJ Brick      7324774368                P. 1



# Pain Institute of New Jersey
254 Brick Blvd., Suite 2
Brick, New Jersey 08724

Office: 732-477-4242   Fax: 732-477-4368

## Fax Cover Sheet (*Edna*)

TO: *Christina Teta*                FROM: *Pain Institute*

ATTN: _____        DATE: *2-10-09*

FAX #: *518-880-6610*                 FAX #: _____

( ) Urgent     ( ) Please Comment     ( ) Reply ASAP   ( ) Please Review     ( ) FYI

Total Page Including Cover Sheet: *5*

*As per request of*
*Mr Van Deventer's*
*medical records*
*(see attached)*

*C# 74518*

Comment:

The document accompanying this facsimile transmission contains information for the sole use of the above-intended recipient and contains privileged and confidential medical information.  Any other distribution or copying of this communication is strictly prohibited.

Please notify us by telephone, 732-477-4242, if you are not intended recipient and return this original message via fax to Pain Institute of New Jersey, 732-477-4368.

received on 2/10/2009 2:11:18 PM [Eastern Standard Time]

Confidential
Admin Rec. 00447

# THE PAIN INSTITUTE OF NEW JERSEY
### 254 Brick Boulevard Suite 2
### Brick, NJ 08724
TEL: (732) 477-4242 FAX: (732) 477-4368

## *OPERATIVE REPORT*

**PATIENT NAME: Ralph Vandeventer**
**DATE OF OPERATION:** February 9, 2009

**SURGEON:** Carmen M. Quinones, MD

**PREOPERATIVE DIAGNOSIS:** Lumbar disc herniation, lumbar radiculopathy

**POSTOPERATIVE DIAGNOSIS:** Same

**OPERATION:** Transforaminal epidural steroid injection, Right L5

**ANESTHESIA:** local anesthetic

**BLOOD LOSS:** None

Clinical: Mr. Vandeventer returns to the office for LESI L5-S1#2. He reported minimal pain relief with this injection. In addition patient had exacerbation of the back and left foot pain after falling last Wednesday February 4th at home. He stated he twisted his ankle. Today physical examination showed some swelling in the left ankle, there is echymossis inferior to the lateral malleoli. There is tenderness at palpation of the lateral ligaments. ROM within functional limit. Patient advised to do ice, rest, elevation, compression and follow up with Dr. Strouse. Regarding his back pain I truly believe he will benefit of a second epidural injection but this time I will be specific to the right L5 transforaminal instead of interlaminar approach. If he doesn't obtain any pain relief then will consider diagnostic facet joint nerve block. Risk, benefit and alternative treatment were discussed with the patient, patient agreed with recommendation and signed informed consent.

**Method of Surgery:** The patient signed an informed consent form in the pre-op area after all risks and complications were explained and all questions were answered. The patient was prepped and draped in a sterile fashion in the prone position. The patient's spine was surveyed under fluoroscopic visualization and anatomical landmarks were identified.

### Right L5 Transforaminal Epidural Steroid Injection
The region overlying the right L5 transverse process of the right L5 nerve root to be blocked was localized under fluoroscopic visualization. The soft tissues overlying this structure were copiously infiltrated with 1% Lidocaine without epinephrine. A 25 gauge 3.5 inch spinal needle was inserted down into the posterior aspect of the base of the transverse process; and then, it was "walked off" the inferior aspect of this transverse process and advanced approximately 1 cm further anteriorly. A 1 cc volume of Omnipaque was injected to confirm the needle location. Then, the injection was performed using

Confidential
Admin Rec. 00448

# THE PAIN INSTITUTE OF NEW JERSEY
### 254 Brick Boulevard Suite 2
### Brick, NJ 08724
TEL: (732) 477-4242 FAX: (732) 477-4368

## *OPERATIVE REPORT*

**PATIENT NAME: Ralph Vandeventer**
**DATE OF OPERATION:** February 9, 2009

40mg Kenalog, 1cc of 1% Lidocaine without epinephrine and 1cc of NSS preservative free.

The patient tolerated the procedures well and was in good condition at the conclusion of the procedures.

**Complications:** None

**Disposition:**
1. The patient was discharged to the recovery area in good condition.
2. Patient was advised to call the office with any questions or concerns; see discharge instructions.
3. Patient to apply ice to injection sites prn.
4. Patient to follow up with Dr. Strouse for eval ankle sprain
5. Schedule patient in two weeks for follow up

**Surgeon:** Carmen M. Quinones, MD, FAAPMR

Confidential
Admin Rec. 00449

## THE PAIN INSTITUTE OF NEW JERSEY
### 254 Brick Boulevard Suite 2
### Brick, NJ 08724
TEL: (732) 477-4242 FAX: (732) 477-4368

## *OPERATIVE REPORT*

**PATIENT NAME: Ralph Vandeventer**
**DATE OF OPERATION:** January 26, 2009

**SURGEON:** Carmen M. Quinones, MD

**PREOPERATIVE DIAGNOSIS:** Lumbar disc herniation

**POSTOPERATIVE DIAGNOSIS:** Same

**OPERATION:** Lumbar epidural steroid #1 injection under fluoroscopically guidance, L4-5

**ANESTHESIA:** local anesthetic

**BLOOD LOSS:** None

**Method of Surgery:** The patient signed an informed consent form in the pre-op area after all risks and complications were explained and all questions were answered. Vital sign remain stable throughout procedure. The patient was prepped and draped in a sterile fashion in the prone position. The patient's spine was surveyed under fluoroscopic visualization and anatomical landmarks were identified.

**Lumbar Epidural Steroid Injection:** The region overlying the right L4-5 interlaminar space was localized and the soft tissues overlying this structure were infiltrated copiously with 1% Lidocaine without epinephrine using a 27G 1.5 inch skin needle. A 17 gauge 3.5 inch Tuohy needle was inserted through the anesthetized tract of tissue to the right L4-5 epidural space. The epidural space was localized using a loss of resistance technique and after a negative aspiration for cerebrospinal fluid or blood, an AP and lateral views were obtained. 2cc of Omnipaque 240 was injected in the epidural space and an epidurogram was obtained. Following this, an 8 cc volume of fluid was injected containing 12mg Celestone, 4 cc of normal saline and 2 cc of 1% Lidocaine without epinephrine, preservative free. The patient tolerated procedure well and was in good condition at the end of procedure.

**Disposition**
1. The patient was discharged to the recovery area in good condition
2. Discharge instructions provided and explained.
3. Call with any questions or problems
4. Apply ice to the injection sites and keep clean and dry for 24 hour
5. Return in 2 weeks for follow up

Carmen M. Quinones, MD
Diplomate of Physical Medicine and Rehabilitation
Interventional Pain Management

Confidential
Admin Rec. 00450

FEB-10-2009 03:14 PM   Pain Institute NJ Brick      7324774368                    P. 5

**Pain Institute of New Jersey**
254 Brick Blvd. Suite 2, Brick, NJ 08274
Phone: 732-477-4242 Fax: 732-477-4368

January 19, 2009

RE: Ralph Vandeventer

# INITIAL EVALUATION

Dr. Irving Strouse
279 Third Avenue
Long Branch, NJ 07740

**CHIEF COMPLAINT:** Low back and knee pain

**HISTORY OF PRESENT ILLNESS:** Mr. Vandeventer is a 50-year-old pleasant male who comes to the Pain Institute of NJ at Brick for initial evaluation. Mr. Vandeventer today is complaining of a long history of low back and knee pain, which started approximately 20 years ago following a ski accident. He reports his pain has been on going since then but during the past 2 years, it progressively worsened. He states that the pain "comes out of the blue" and is breathtaking. He has been taking over-the-counter medications with little relief of his pain. Mr. Vandeventer also reports right knee surgery in 2005 and due to him favoring his knee, he exacerbated his low back pain. Patient describes his low back pain as constant, sharp and stabbing radiating down his right leg. He also reports radiating pain into his left buttocks. Patient underwent physical therapy November 24, 2008. Any type of weight bearing exacerbates his pain. Sitting, lying down relieve his pain. VAS: 8/10.

**PAST MEDICAL HISTORY:** Denies

**PAST SURGICAL HISTORY:** Right knee menicus tear in 2005

**CURRENT MEDICATIONS:** None

**ALLERGIES:** None

**SOCIAL HISTORY:** Patient is married with grown children. He is presently unemployed due to his pain. Patient did work for Johnson and Johnson Insurance. He denies any type of tobacco, alcohol or illicit drug usage.

**REVIEW OF SYSTEMS:** Review of systems is negative. Specifically, there were no constitutional symptoms or changes referable to vision, ENT, CV or respiratory systems, GI or GU tracts. Patient reports depression and memory loss, he denies any suicidal thoughts.

**PHYSICAL EXAMINATION**
Blood Pressure:114/75        Heart Rate: 82        SP02: 94%     Weight: 215 lbs      Height: 6'2"

**General:** The patient appears their stated age and is in no acute distress.

**Neurological exam** reveals that Cranial Nerves II - XII are intact. The patient is alert and oriented to person, place, and time. The patient concentrates well and is not easily distracted. Speech is smooth and clear. Deep tendon reflexes at the biceps, triceps, knee, and ankle are +2 and symmetrical. Sensation is intact to light touch in the lower extremities. Manual muscle testing reveals 5/5 strength throughout both upper and lower extremities. Patient could heel/toe walk.

Confidential
Admin Rec. 00451

received on 2/10/2000 2:14:10 PM [Eastern Standard Time]

Pain Institute of New Jersey
254 Brick Blvd. Suite 2, Brick, NJ 08274
Phone: 732-477-4242 Fax: 732-477-4368

January 19, 2009

RE: Ralph Vandeventer

**DIAGNOSTIC STUDIES:** MRI of the lumbar spine completed on November 13, 2008 revealed: transitional type vertebral body referred to as L5. Disc bulge L4-5 and L3-4 with a superimposed disc herniation in the right neural foramen at L4-5. Diffuse facet degenerative changes.

**IMPRESSION:**
Lumbar disc herniation
Lumbar radiculopathy
Right knee pain

**PLAN OF TREATMENT:**
Since patient just completed series of physical therapy last session November 24, 2008, I would like to schedule patient for series of LESI x 3 under fluoroscopic guidance. Risks and benefits of the above procedure were discussed in detail. Education material was handed out. Patient understood the plan and signed the informed consent. Patient to continue over the counter Motrin PRN. Schedule the patient accordingly.


Carmen M. Quinones, MD
Diplomate American Board of Physical Medicine and Rehabilitation
Pain Management Specialist

CMQ/vp      (dictated but not read)

Confidential
Admin Rec. 00452

NORMAN M. HEYMAN, M.D., P.A.
ORTHOPAEDIC SURGERY
245 UNION AVENUE
BRIDGEWATER, NEW JERSEY 08807-3092

TELEPHONE (908) 526-2889
FAX (908) 526-6753

.FELLOW OF THE AMERICAN ACADEMY
OF ORTHOPAEDIC SURGEONS

FELLOW OF THE AMERICAN ACADEMY
OF SURGEONS

Exam Coordinators Network
123 Northwest 13ᵗʰ Street, #207
Boca Raton, FL 33432

February 11, 2009

RE:                          RALPH VAN DEVENTER
DOB:
D/I:
FILE#:                       27785
CLAIM:
EXAMINATION:
D/E:                         01/13/2009
EXAMINING
ORTHOPAEDIC SURGEON:         NORMAN M. HEYMAN, M.D.

To Whom It May Concern:

Over an hour was spent with Mr. Van Deventer and I have provided the information as best I could based upon what he told me. His added information is his critique of my report and was not discussed during the exam as treatment was not discussed at all, nor did I discuss the examination. Whatever corrections need to be made shall be made and as I have noted I expressed my opinion based upon my 40 years of orthopaedic experience as best I could.

I state that I am a physician, authorized by law to practice in the state of New York and the state of New Jersey: am not party to this proceeding; am the physician who subscribed the above (or attached) report; have read and personally, by my hand, signed the same and know the contents thereof; that the same is true to my knowledge, except in the matters stated to be on information and belief, and as to the matters, I believe it to be true.

The undersigned hereby affirms that the foregoing statements are true under the penalties of perjury.

I am available for testimony via telephone on Tuesday afternoons at 2 p.m. and Wednesday afternoons at 4 p.m. weekly.

Thank you very kindly, I remain,

Very truly yours,

Norman M. Heyman, M.D.
F.A.A.O.S.    F.A.C.S
Tax I.D.22-2093588

WCB Rating Code:  COS
NMH/ad

Confidential
Admin Rec. 00453

02/06/2009  08:54   7325711937          STROUSE/LOPANO                    PAGE  01

FROM : A-Z VIDEO          FAX NO. : 7322784267        Jan. 30 2009 02:40PM  P2

 

## ATTENDING PHYSICIAN STATEMENT
### Please <u>Fax</u> to 518-880-6610 or <u>Mail</u> to the Address Listed Below

NOTE TO PHYSICIAN OR OTHER HEALTH CARE PROVIDER: Your full completion of this form is necessary so that the employee's application for benefit may be received and processed. Space is available on the reverse side if you wish to amplify your answers.

PLEASE ANSWER ALL QUESTIONS. RETURN FORM TO REED GROUP PROMPTLY.

Name of patient  Ralph Van Deventer          Date of birth ▓▓▓▓▓  Mo.  Day  Year

Employer name  Ortho Clinical Diagnostics

1. HISTORY
(a) When did symptoms first appear or accident happen?  Mo.____ Day____ Year____
(b) Date patient ceased work because of disability  Mo.____ Day____ Year____
(c) Has patient ever had same or similar condition?  ☐ Yes  ☐ No  If "Yes" state when and describe:

(d) Is condition due to injury or sickness arising out of patient's employment?  ☐ Yes  ☐ No  ☐ Unknown
(e) Names and addresses of other treating physicians:

2. DIAGNOSIS (including primary and secondary diagnoses or complications)
(a) Diagnosis: _____
(b) Date of last examination  Mo.____ Day____ Year____
(c) Subjective symptoms:

(d) Objective findings: Your patient may be covered under the provisions of the Johnson & Johnson Long Term Disability (LTD) Plan. To assist Reed Group in making this difficult determination, we request your cooperation in forwarding: the yield of objective tests already taken (for example, electrocardiograms, angiograms, etc. for a heart condition; vital capacity readings for emphysema; x-rays for muscular skeletal disorders) and the results found through the use of other clinical techniques.

Do you wish this information returned?  ☐ Yes  ☐ No

3. DATES OF TREATMENT
(a) Date of first visit  Mo.____ Day____ 19____
(b) Date of last visit  Mo.____ Day____ 19____
(c) Frequency  ☐ Weekly  ☐ Monthly  ☐ Other (Specify)

4. NATURE OF TREATMENT (including surgery and medications prescribed, if any)
Physical therapy — Cam Walker

5. PROGRESS
(a) Has patient  [ ] Recovered?  ☒ Improved?  ☐ Unchanged?  ☐ Retrogressed?
(b) Is patient  ☒ Ambulatory?  ☐ House confined?  ☐ Bed confined?  ☐ Hospital confined?
(c) Has patient been hospital confined?  ☐ Yes  ☐ No
If "Yes", give Name and Address of Hospital _____
Continued from _____ through _____

6. CARDIAC (if applicable)
(a) Functional capacity  [ ] Class 1 (No limitation)  ☐ Class 2 (Slight limitation)
(American Heart Ass'n.)  [ ] Class 3 (Marked limitation)  ☐ Class 4 (Complete limitation)

(b) Blood Pressure (last visit)  ____/____
SYSTOLIC  DIASTOLIC

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061 | 866-629-8861 | Fax: 518-880-6610

JJ046

received on 2/6/2009 8:52:29 AM [Eastern Standard Time]

Confidential
Admin Rec. 00454

02/06/2009   08:54     7325711937                    STROUSE/LOPANO                    PAGE   02

FROM : A-Z VIDEO                     FAX NO. : 7322704287          Jan. 30 2009 02:41PM  P3

  ReedGroup

## ATTENDING PHYSICIAN STATEMENT

**7. PHYSICAL IMPAIRMENT**

- ☐ Class 1 — No limitation of functional capacity; capable of heavy physical activity. No restrictions. (0-10%)
- ☐ Class 2 — Slight limitation of functional capacity; capable of light manual activity. (15-30%)
- ☒ Class 3 — Moderate limitation of functional capacity; capable of clerical administrative (sedentary) activity. (35-55%)
- ☐ Class 4 — Marked limitation. (f 0-70%)
- ☐ Class 5 — Severe limitation of functional capacity; incapable of minimal (sedentary) activity. (75-100%)
- ☐ Remarks:

**8. MENTAL/NERVOUS IMPAIRMENT (if applicable)**

- ☐ Class 1 — Patient is able to function under stress and engage in interpersonal relations (no limitations).
- ☐ Class 2 — Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitations).
- ☐ Class 3 — Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations).
- ☐ Class 4 — Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations).
- ☐ Class 5 — Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations).
- ☐ Remarks:

Do you believe patient is competent to endorse checks and direct the use of the proceeds thereof?   ☐ Yes  ☐ No

**9. PROGNOSIS**

|  | PATIENT'S JOB | ANY OTHER WORK |
|---|---|---|
| (a) Is patient now totally disabled? | ☐ Yes  ☒ No | ☐ Yes  ☐ No |
| (b) Do you expect a fundamental or marked change in the future? | ☒ Yes  ☐ No | ☐ Yes  ☐ No |

(1) If "Yes," when will patient recover sufficiently to perform duties _____ / _____ / _____  Mo.  Day  Yr.  ☐ 1 Mo.  ☐ 3-6 Mos.  ☐ 1-3 Mos.  ☐ Never        _____ / _____ / _____  Mo.  Day Yr.  ☐ 1 Mo.  ☐ 3-6 Mos.  ☐ 1-3 Mos.  ☐ Never

(2)  If "No," please explain:

**10. REHABILITATION**

|  | PATIENT'S JOB | ANY OTHER WORK |
|---|---|---|
| (a) Is patient a suitable candidate for trial employment? | ☒ Yes  ☐ No | ☐ Yes  ☐ No |

(1) If "Yes," when could trial employment commence?  2 / 1 / 09  Mo.  Day  Yr.  ☐ 1 Mo.  ☐ 3-6 Mos.  ☐ 1-3 Mos.  ☐ Never        _____ / _____ / _____  Mo.  Day  Yr.  ☐ 1 Mo.  ☐ 3-6 Mos.  ☐ 1-3 Mos.  ☐ Never

(2) If "Yes," what training will patient require?
(3) If "Yes," what type of employment would you suggest?  *Sedentary Work 4 hours / day*
(4) If "No," please explain:

**11. REMARKS**

Physician's Signature _____        2/5/09  Date

IRVING D. STROUSE, M.D., P.A.

Name (Attending Physician) Print     279  30  Ave  #504     Long Branch  NJ   07740
                                      Street Address          City or Town   State of Province  Zip Code

Degree _____   Telephone _____

WWID #

Employee Full Name   Ralph Rober Van Deventer Jr.        10900

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061| 866-829-8861 | Fax 518-880-6610

received on 2/6/2009 8:52:29 AM [Eastern Standard Time]

Confidential
Admin Rec. 00455

 
www.rgi.net

## APPLICATION FOR DISABILITY BENEFITS

**TO BE COMPLETED BY EMPLOYEE     PLEASE TYPE OR PRINT CLEARLY     ANSWER ALL QUESTIONS**

| 1. EMPLOYEE FULL NAME (Last, First, Middle Initial) | 2. Social Security Number |
|---|---|
| Van Deventer J. Ralph R. | [redacted] |

| 3. Address (City, State, Zip Code) | 4. Phone Number (Area Code) |
|---|---|
| [redacted] | [redacted] |

| 5. Date of Birth | 6. Height | 7. Weight | 8. Gender | 9. Marital Status | 10. Spouse's Date of Birth | 11. Is Spouse Employed? |
|---|---|---|---|---|---|---|
| Mo Day Yr<br>11-19-58 | 6 | 215 | ☒ M ☐ F | ☐ single ☒ married<br>☐ widowed ☐ divorced | Mo 02 Day 19 Yr 65<br>First Name Maryanne | ☐ Yes ☒ No |

| 12. Number of Children | 13. List names with dates of birth for unmarried children who have not finished high school: |
|---|---|
| 4 | Evan J. Van Deventer 04-03-93    Bryce D. VanDeventer 05-18-02<br>Riley E. Van Deventer 12-12-99    Lily V. Van Deventer 12-13-03 |

### PART I. INFORMATION ABOUT YOUR CONDITION

14. What is your disabling condition? (Briefly describe the injury or illness that prevents, or has prevented, you from working.)
① Lower chronic back pain in the lumbar section that is accompanied by sciatic pain
② Mid-upper back pain
③ Left achilles tenosynovitis

| 15. Is your injury or illness related to or caused by your work in any way?   1. No   3. No   2. Yes | ☒ Yes ☐ No |
|---|---|

| 1. On what date did your condition first bother you:   Month JAN Day ___ Year 1979 | |
|---|---|

| 2A. Did you work after the date shown in item 1? (If "No," go to items 3A and 3B) | ☒ Yes ☐ No |
|---|---|

2B. If you did work since the date in item 1, did your condition cause you to change:

| | | |
|---|---|---|
| Your job or job duties? | ☐ Yes | ☒ No |
| Your hours of work? | ☐ Yes | ☒ No |
| Your attendance? | ☒ Yes | ☐ No |
| Anything else about your work? | ☒ Yes | ☐ No |

Duties remained the same, but carried them out differently. Frequent switching between sitting, walking and stretching, multiple breaks
(If you answered "No" to all items under 2B, go to items 3A and 3B.)

2C. If you answered "Yes" to any item in 2B, explain below what the changes in your work circumstances were, the dates they occurred, and how your condition made these changes necessary. Sedentary job (desk job) caused me to sit for long periods of time. Due to my back injury I had to frequently get up, walk around, "pop" my spine back in place, and stretch to help get through the day. This progressed over the years, but was especially more difficult since May 2008. For the past several years I had to take time off to attend/rest my back due to the pain experienced. My left achilles also makes it hard to stand/walk.

| 3A. On what date did your condition finally make you stop working?   Month 9 Day 8 Year 08 | |
|---|---|

3B. Explain how your condition now keeps you from working. Between my back pain and my achilles pain it is hard to maneuver. When I sit too long (20min) my back pain/sciatic is hot and my achilles becomes stiff with a burning sensation in my calf. When I stand/walk for too long (15 min) my back pain is great. This has caused me to constantly switch between the two (sitting/walking) to help keep the pain less.

Johnson & Johnson

REED GROUP
RECEIVED
FEB 0 2 2009
Confidential
Admin Rec. 00456



Describe the kind and amount of physical activity this job involved during a typical day in terms of:

- Walking (circle the number of hours a day spent walking)      0  1  ②  3  4  5  6  7  8
- Standing (circle the number of hours a day spent standing)   0  ①  2  3  4  5  6  7  8
- Sitting (circle the number of hours a day spent sitting)        0  1  2  3  4  5  ⑥  7  8
- Bending (circle how often a day you had to bend)                Never · Occasionally · (Frequently) · Constantly
- Reaching (circle how often a day you had to reach)             Never · Occasionally · (Frequently) · Constantly
- Lifting and Carrying (describe below what was lifted, and far it was carried; check heaviest weight lifted, and weight frequently lifted and/or carried):

| HEAVIEST WEIGHT LIFTED | WEIGHT FREQUENTLY LIFTED/CARRIED |
|---|---|
| ☐ 10 lbs. | ☐ 10 lbs. |
| ☐ 20 lbs. | ☐ 20 lbs. |
| ☒ 50 lbs. | ☒ 50 lbs. |
| ☐ 100 lbs. | ☐ 100 lbs. |
| ☐ Over 100 lbs. | ☐ Over 100 lbs. |

Have you been hospitalized or treated at a clinic for your disabling condition?   ☐ Yes  ☒ No
If "Yes," show the following and give dates of confinement:

| Name of Hospital or Clinic: | Address: | Dates of Confinement: |
|---|---|---|
| | | |

| Names and addresses of any physicians consulted: | Dates Consulted: |
|---|---|
| | |

## PART II – INFORMATION ABOUT OTHER INCOME

Are you receiving any income benefits?   ☐ Yes  ☒ No
If "Yes," check applicable box or boxes below and provide detail.

☐ Disability Benefit
☐ Pension Plan
☐ Worker's Compensation
☐ Sick Leave

☐ Federal Social Security, Railroad Retirement Act, Veterans Administration, any Federal, State, or other Government Agency Benefits or Employer's Liability Law Benefits
☐ Other

| Source of Benefits | Monthly Amount | Commencement Date of Payments | Termination of Payments |
|---|---|---|---|
| | | | |

## PART III – INFORMATION ABOUT YOUR EDUCATION

1. What is the highest grade of school that you completed and when?   Associate's Degree   1985

2. Have you gone to trade or vocational school or had any type of special training?   ☐ Yes  ☒ No
If "Yes," show:

- The type of trade or vocational school or training: _____
- Approximate dates you attended: _____
- How this schooling or training was used in any work you did: _____

REED GROUP
RECEIVED
FEB 0 2 2009
EAST GREENBUSH

| Employee Full Name | WWID # |
|---|---|
| Ralph Robert VanDeventer Jr. | 10900 |

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061| 866-829-8861 | Fax: 518-880-6610

JJ046

Confidential
Admin Rec. 00457

 

## PART IV – INFORMATION ABOUT THE WORK YOU DID

1. List all jobs you have had in the last 15 years before you stopped working, beginning with your current job. Normally, this will be the kind of work you did the longest. (If you have a 6th grade education or less, AND did only heavy unskilled labor for 35 years or more, list all of the jobs you have had since you began to work. Use a separate sheet as necessary and attach it to this form.)

| Job Title (Be sure to begin with your "current" job) | Type of Business | Date Worked (Month and Year) From | Date Worked (Month and Year) To | Days per Week | Rate of Pay (Per hour, day, week, month or year) |
|---|---|---|---|---|---|
| Sr. QA Analyst | Medical Device | 4/89 | Present | 5 | $79,000 /year |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

2. Provide the following information for your usual job shown in item 1, line 1:
In your job, did you:

- use machines, tools, or equipment of any kind?  ☑ Yes ☐ No
- use technical knowledge or skills?  ☑ Yes ☐ No
- do any writing, complete reports, or perform similar duties?  ☑ Yes ☐ No
- have supervisory responsibilities?  ☐ Yes ☑ No

Describe your daily activities in the following areas, and state what and how much you do of each and how often you do it::

- Household maintenance (including cooking, cleaning, shopping, and odd jobs around the house, as well as any other similar activities):
  Cook breakfast (toast & oatmeal) for the children. No odd jobs or cleaning around the house.

- Recreational activities and hobbies (hunting, fishing, bowling, hiking, musical instruments, etc.):
  None

- Social contacts (visits with friends, relatives, neighbors):
  Friends and relatives visit at my home.

- Other (drive car, motorcycle, ride bus, etc.):
  Drive approximately 4 miles /day to drop off children at school.

I hereby authorize all physicians and health care professionals, hospitals and other healthcare institutions, insurers, employers, and group policy holders. You are authorized to provide Reed Group, 15 Tech Valley Drive East Greenbush, NY 12061, acting on my employer's behalf, with information concerning my health care, history, examination, treatment (including but not limited to copies of my medical record), advice, and supplies provided to me, and any employment-related information regarding my primary and/or secondary diagnoses as they relate to my disability benefits. This information will be used to evaluate and administer my application for disability benefits and may be reviewed by authorized medical and/or human resources professionals affiliated with my employer. I understand that this authorization is valid until I submit written revocation to my employer or Reed Group. I hereby release any person or entity providing information from any and all liability for furnishing such information. I agree that a photographic or facsimile copy of this authorization is as valid as the original.

Employee's Signature _____  Date 01/28/09

Employee Full Name  Ralph Robert Van Deventer Jr.  WWID # 109.00

Form #G-2609

REED GROUP RECEIVED
FEB 0 2 2009
EAST GREENBUSH

Confidential
Admin Rec. 00458

 

## Direct Deposit Enrollment Form

To enroll or stop in Full Service Direct Deposit, simply fill out this form and **mail** or **fax** it to Reed Group at 518-880-6610. Also, when enrolling, **please also attach a voided check** – not a deposit slip. If depositing to a savings account, ask your bank to give you the Routing/Transit Number for your account. It isn't always the same as the number on a savings deposit slip. This will help ensure that you are paid correctly.

Below is a sample check MICR line, detailing where the information necessary to complete this form can be found.



**Important! Please read and sign before completing and submitting.**
I hereby authorize RGL to deposit any amounts owed me, by initiating credit entries to my account at the financial institution (hereinafter "Bank") indicated on this form. Further, I authorize Bank to accept and to credit and credit entries indicated by RGL to my account. In the event that RGL deposits funds erroneously into my account, I authorize RGL to debit my account for an amount not to exceed the original amount of the erroneous credit.

This authorization is to remain in full force and effect until RGL and Bank have received written notice from me of its termination in such time and such manner as to afford RGL and Bank reasonable opportunity to act on it.

Name: _Ralph Robert Van Deventer Jr._    Social Security #: _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_

Signature: _Ralph R V Deventer Jr._    Date: _01/28/09_

1. **Election** (Must Select One):  ☒ Start Direct Deposit    ☐ Stop Direct Deposit    ☐ Change Account

2. **Account Information**
   1. Bank Name/City/State: _Wachovia / Toms River / New Jersey_
   2. Account #: _100008515 04.95_
   3. Type of Account: ☒ Checking   ☐ Savings   ☐ Other
   4. Routing/ Transit #: _021200025_

**Please Mail to the Address Listed Below or Fax to 518-880-6610**

> REED GROUP
> RECEIVED
> FEB 0 2 2009
> EAST GREENBUSH

Reed Group | 15 Tech Valley Drive | 2ⁿᵈ Floor, Suite 3 | East Greenbush, NY 12061| 866-829-8861 | Fax: 518-880-6610

JJ046

Confidential
Admin Rec. 00459



Confidential
Admin Rec. 00460

 

## REIMBURSEMENT AGREEMENT
Johnson & Johnson Long Term Disability Plan

### EMPLOYEE STATEMENT

| Name: Ralph R. Van Deventer Jr. | Social Security Number: | | Date of Birth: |
|---|---|---|---|
| Address - Street: | City: Toms River | State: N J | Zip Code: 08753 |
| Home Telephone Number: | Employee's Home E-mail Address (if available): | | |

I am familiar with and understand the provisions of the Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Companies (the "Plan") that require that monthly payments to me will be reduced by certain amounts, such as Social Security and Workers' Compensation benefits. I understand that these reductions may sometimes be based on a reasonable estimate of the amount of other benefits that will be paid to me. I agree to these reductions.

I further understand and agree that I am required to repay the Plan for any overpayments that have been made to me, including, without limitation, payments that have not been offset (or offset fully) for retroactive awards of Social Security, Workers' Compensation or other relevant benefits under the terms of the Plan and that I am required to pay the Plan any amounts that I recover from a third party in connection with my disability to the extent provided under the terms of the Plan. I agree to make these payments promptly, in accordance with the terms of the Plan. I understand and agree to the terms of the Plan regarding other rights of the Plan to recover amounts through subrogation and third party reimbursement.

I further agree to notify the Reed Group immediately upon my receiving notice that I have or will receive any amounts that offset my benefits under the Plan or any amounts that oblige me to pay or repay any amount to the Plan.

| Employee's Signature: | Date: 01/28/09 |
|---|---|
| Witness Signature: Maryanne VanDerven | Date: 01/28/09 |

## Please Fax to 518-880-6610 or Mail to the Address Listed Below



Confidential
Admin Rec. 00461

 

## Social Security Administration
Consent for Release of Information  OMB No 0960-0566

TO: Social Security Administration

Name (Please Print): Ralph Robert Van Deventer Jr.

Date of Birth: 11/19/58     Social Security Number: ▓▓▓▓▓▓▓▓

I authorize the Social Security Administration to release information or records about me to:

NAME          ADDRESS
Allsup, Inc. (Allsup)                                          300 Allsup
Pl., Belleville, IL 62223

I want this information released because:

Reed Group has requested this information from me through Allsup. In this regard, I authorize Allsup to provide any information obtained as a result of this Consent for Release of Information to Reed Group and/or its designees. This authorization is in addition to any other authorization I have provided or may provide in the future.

Please release the following information:

  NA   Social Security Number
  NA   Identifying information (includes date and place of birth, parents' names)
  X    Monthly Social Security benefit amount and date of entitlement or NIF
  NA   Monthly Supplemental Security Income payment amount
  NA   Information about benefit/payments I received from _ to _
  NA   Information about my Medicare claim/coverage from _ to _
  (specify)_____
  NA   Medical records
  NA   Record(s) from my file (specify)_____
  X    Other (specify): FACT Query for Primary and/or dependent(s)

I am the individual to whom the information/record applies or that person's parent (if a minor) or legal guardian. I know that if I make any representation which I know is false to obtain information from Social Security records, I could be punished by fine or imprisonment or both.

Signature: _____

Date: 01/28/09     Relationship: Self.

## Please Fax to 518-880-6610 or Mail to the Address Listed Below

SSA-3288 Internet (12/99)

REED GROUP
RECEIVED
FEB 0 2 2009
EAST GREENBUSH

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061| 866-829-8861 | Fax: 518-880-6610

JJ046

Confidential
Admin Rec. 00462



Ralph Van Deventer
Maryanne Van Deventer
905 Forge Lane
Toms River, NJ 08753

TRENTON NJ 086

BUSINESS REPLY MAIL
FIRST-CLASS MAIL     PERMIT NO. 85     WESTMINSTER CO

POSTAGE WILL BE PAID BY ADDRESSEE

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

REED GROUP
15 TECH VALLEY DR  STE 3
EAST GREENBUSH  NY  12061-9980

Confidential
Admin Rec. 00463

FROM : A-Z VIDEO                    FAX NO. : 7322704287              Jan. 29 2009 06:06PM P1

To:    Christina Teta                                              01/29/09
       Reed Group
       518-880-6610 Fax
       cteta@rgl.net

From:  Ralph Van Deventer



Re:    Independent Medical Evaluation for Case # 74518

Ms. Christina,

       I have received the fax copy of the IME report dated 01/14/09 that you sent me.
Thank you for doing this. The purpose of this letter is to clarify points in the report that
are either transcription errors or misunderstandings during the interview. Much
information was relayed and I think some of it was left out or confused with other points
of discussion during note taking. Of course, this is so that you will have a comprehensive
understanding of my condition and can be added to my case file for evaluation. I have
referenced these points by their page # and category for easy/quick referral.

Page 1 History of Present Illness
   • Dr. Heyman recorded the wrong dates about my left ankle/Achilles. I experienced
     pain in my Achilles in May 2008 but held off seeking treatment thinking it would
     go away. It was in September 2008 that I went to Dr. Strouse for treatment of my
     Achilles as well as my back.
   • It was December 2008 that Physical Therapy started for my left ankle, but it was
     not with heat and stimulation. They had me exercise and stretch my Achilles. The
     heat and stimulation was for treating my back injury.
   • I did not say "my back is starting to improve". This note may lead one to believe
     that my back injury is improving, but this is not the case. I merely said that due to
     the Physical Therapy program, they have taught me how to *improve* my back's
     posture.
   • As regarding to sleeping, I expressed that I can only sleep in a recliner chair, with
     a lumbar support, to take the pressure off my lower back. I cannot shift from side
     to side "if" I was laying flat on my back in bed. In the past I had to roll out of bed
     to get up, but since my injury has worsened, I have reverted to sleeping in the
     recliner.
   • Since we were talking about two areas of injury, I believe things got mixed up in
     the transcription. I definitely did not "indicate" that my back was somewhat
     better. I stated that the swelling in my left Achilles is somewhat better.

Page 2 Medical Records Reviewed
   • Orthopedic notes are not included. Were they not part of the chart given to Dr.
     Heyman? Mostly excuse slips and prescriptions for physical therapy were noted.

Confidential
Admin Rec. 00464

- No Physical Therapy notes included. Were none supplied? In both cases, the absence of additional data does not help form an accurate conclusion.

Page 2 <u>Physical Examination</u>
- Behavior indicated in the report is typical of my character. I was in pain, but because I have "managed" it for so long, I know what to do so it does not affect my outward appearance and how I conduct myself. This, along with taking excess Ibuprofen, helps me get through the day.
- I was driven to the IME appointment by my brother-in-law.

Page 3 <u>Second Range of Motion (about left ankle)</u>
- Left Achilles reported as "not tender". If he had squeezed it like my orthopedic, he would know that it is tender. He basically ran his fingers over it and measured it, but not squeezing it.

Page 3 <u>Special Tests in the Lower Extremity</u>
- "No sign of sciatic nerve root irritation...." Was in part due to the anti-inflammatory taken that day along with the fact we stopped every 15-20 minutes for me to pop my spine back in place and to walk around some. I was in discomfort with my sciatic that really never leaves me. Again, because of who I am and have managed my pain for so long and he not knowing me took that as no pain. Although, he did asked me if my sciatic was bothering me in which I told him yes, that is not in his report. The Physical Therapist, who has been treating me for 5 months, knows about my sciatic pain, but since Dr. Heyman does not have her reports, he made a judgment call with limited information.

Page 4 <u>Question 2</u>
- I explained to Dr. Heyman that I already use lumbar support devices when I sit at home, in the car and even at work (when I was there). I also use a swivel disk in the car to sit on so I don't have to shift my weight getting in or out of the car. It is like a Lazy Susan so you can spin on. Even with all these in place, I still cannot sit for long periods of time ~20 minutes 30 on a good day. He is stating that with the proper coaching I could sit longer with a lumbar support. I explained to him that my work has us take training yearly on ergonomically work station sitting. I have been ergonomically trained on a yearly basis about proper sitting at the work station and I use a lumbar support. He did not include this information in his notes that I had given him. In his report he states that he does not think that the physical therapy exercises, that I explained to him, help. Yet at our consult he did not mention that to me or offer any advice to the contrary. I believe the P.T. program is stretching/exercises my back muscles, but do not stabilize my lumbar section, which I had stated to Dr. Heyman, which is not in his report either. My P.T. is working with me to help strengthen the muscle in my back in hopes it will stabilize my vertebra. Again, I told this to Dr. Heyman which is also is not in his report.

Confidential
Admin Rec. 00465

Page 4 Question 3
- A lift inside or outside the shoe will deflexed my Achilles tendon, which will hurt and it in turn, aggravate my back. The cam boot had this effect, which was stated to Dr. Heyman. I already favor my right side and to have this lift in place would only make matters worse. He never talked to me about this at the time or I could have explained this to him concerning my foot.

Page 4 Question 4
- I already had in place, at work, the lumbar support Dr. Heyman refers to along with frequent walking and stretching. I explained to him I did sit for long periods of time using a lumbar support. I would get up a few times daily due to my back and leg to walk and stretch, yet I just pushed through taking Ibuprofen and Tylenol during the course of the day. It came to a point that the Ibuprofen I would take during the day was not helping my pain. I had to stand and stretch much more frequently which I did for most of the summer and I still had back problems. The same is true at home. My daily regimen consists of frequent switches between sitting, walking and stretching. Those comments are not in his report.

Page 4 Question 5
- Dr. Heyman failed to realize that during physical therapy, I do not wear the cam boot, which I told him was the case, this did not make it into the report either. Putting in a heel pad would cause more pain to my Achilles causing it to flex in the wrong direction (toes down), which I expressed to him causes great pain. Flexing in the opposite direction (toes up) does not cause pain. How do you drive if you cannot flex down for any extended length of time before it becomes a safety hazard? I explained to Dr. Heyman, in detail, the exercises for my Achilles, but he stated in his report that they "are not indicated." That was left out of the report also. I also explained the exercises for my back, which are difficult, but he does not believe they strengthen my back.

Page 5 Question 5 Cont'd
- Again, Dr. Heyman forgot that I told him of the lumbar pillow/support used at home, work and in the car and yet I still experience back pain. Yet it is on his report as a recommendation, but I had told him I already do this.

Experiences during the IME that were not recorded:
- During the physical examination, Dr. Heyman asked me to bend and touch my toes. I was apprehensive knowing that I can't and in trying to do so put me in jeopardy of more back pain. With his hand on my lumbar section, I bent forward and stopped and stated at the point when I could not go any further due to the pain. At the same time I stopped, Dr. Heyman said that that was enough, realizing/feeling the change in my back.
- I stated that all the muscle strengthening so far still has not stabilized my spine. I feel my back problems to be nerve related due to structural damage.

Confidential
Admin Rec. 00466

- I conveyed to Dr. Heyman the toll this has taken on me physically and emotionally. I stated that this has caused me to realize that my back and probably my Achilles will not get better and that this is the best it will be. Accepting this is hard, because I was such an active person with a large family, relying on others to do tasks for me caused me to be depressed and anxious for the future of my wife and children. As a result, I have sought the help of a psychiatrist. Time is of the essence, as my short term disability runs out in a month. My future is in question. Will I ever work at the job I love? Will I be terminated? How will I provide for my wife and children? Will I be approved for long term disability? These and many other unanswered questions have me more than worried – a behavior that is not me. Friends, neighbors and family see me as a different person than a year ago.

- During the first few minutes of the IME, Dr. Heyman quoted a renowned orthopedic about back pain/injury. He said and I paraphrase "America spends too much time, resources and money on back injuries and that people should not do what causes them to have back pain, and that the money spent on curing it was wasteful." To that I said I agree people should not get themselves into position that would cause them back pain, but as for the rest I could not agree. It had set an eerie atmosphere for the rest of the examination. I thought maybe he would not take to heart this philosophy and include me in this generalization, but treat me on an individual basis as no two patients are the same. Does his statement to me about the back injuries and the waste of time and money mean he already had a preconceived notation of me? Not based on me personally, but grouping me in with the masses?

- As an update since the IME, I have received my first epidural block injection on 01/26/09. They said it could take up to 72 hours to take effect. That has not happened and they will prescribe pain medication until my next appointment on 02/09/09.

- Lastly, my experience with those in charge of my care has been exceptional. This includes the orthopedic surgeon, the physical therapist and the Reed Group. I am grateful for the support, help and encouragement all these people have expressed to me.

If you have any questions, please call me and I will be glad to answer any questions.

Sincerely,

Ralph Van Deventer

cc: Dr. Stouse
Heartland Rehabilitation

Confidential
Admin Rec. 00467

To:    Christina Teta                                    01/29/09
       Reed Group
       518-880-6610 Fax
       cteta@rgl.net

From:  Ralph Van Deventer

Re:    Independent Medical Evaluation for Case # 74518

Ms. Christina,

    I have received the fax copy of the IME report dated 01/14/09 that you sent me.
Thank you for doing this. The purpose of this letter is to clarify points in the report that
are either transcription errors or misunderstandings during the interview. Much
information was relayed and I think some of it was left out or confused with other points
of discussion during note taking. Of course, this is so that you will have a comprehensive
understanding of my condition and can be added to my case file for evaluation. I have
referenced these points by their page # and category for easy/quick referral.

Page 1 History of Present Illness
- Dr. Heyman recorded the wrong dates about my left ankle/Achilles. I experienced
  pain in my Achilles in May 2008 but held off seeking treatment thinking it would
  go away. It was in September 2008 that I went to Dr. Strouse for treatment of my
  Achilles as well as my back.
- It was December 2008 that Physical Therapy started for my left ankle, but it was
  not with heat and stimulation. They had me exercise and stretch my Achilles. The
  heat and stimulation was for treating my back injury.
- I did not say "my back is starting to improve". This note may lead one to believe
  that my back injury is improving, but this is not the case. I merely said that due to
  the Physical Therapy program, they have taught me how to *improve* my back's
  posture.
- As regarding to sleeping, I expressed that I can only sleep in a recliner chair, with
  a lumbar support, to take the pressure off my lower back. I cannot shift from side
  to side "if" I was laying flat on my back in bed. In the past I had to roll out of bed
  to get up, but since my injury has worsened, I have reverted to sleeping in the
  recliner.
- Since we were talking about two areas of injury, I believe things got mixed up in
  the transcription. I definitely did not "indicate" that my back was somewhat
  better. I stated that the swelling in my left Achilles is somewhat better.

Page 2 Medical Records Reviewed
- Orthopedic notes are not included. Were they not part of the chart given to Dr.
  Heyman? Mostly excuse slips and prescriptions for physical therapy were noted.

Confidential
Admin Rec. 00468

- No Physical Therapy notes included. Were none supplied? In both cases, the absence of additional data does not help form an accurate conclusion.

Page 2 Physical Examination
- Behavior indicated in the report is typical of my character. I was in pain, but because I have "managed" it for so long, I know what to do so it does not affect my outward appearance and how I conduct myself. This, along with taking excess Ibuprofen, helps me get through the day.
- I was driven to the IME appointment by my brother-in-law.

Page 3 Second Range of Motion (about left ankle)
- Left Achilles reported as "not tender". If he had squeezed it like my orthopedic, he would know that it is tender. He basically ran his fingers over it and measured it, but not squeezing it.

Page 3 Special Tests in the Lower Extremity
- "No sign of sciatic nerve root irritation...." Was in part due to the anti-inflammatory taken that day along with the fact we stopped every 15-20 minutes for me to pop my spine back in place and to walk around some. I was in discomfort with my sciatic that really never leaves me. Again, because of who I am and have managed my pain for so long and he not knowing me took that as no pain. Although, he did asked me if my sciatic was bothering me in which I told him yes, that is not in his report. The Physical Therapist, who has been treating me for 5 months, knows about my sciatic pain, but since Dr. Heyman does not have her reports, he made a judgment call with limited information.

Page 4 Question 2
- I explained to Dr. Heyman that I already use lumbar support devices when I sit at home, in the car and even at work (when I was there). I also use a swivel disk in the car to sit on so I don't have to shift my weight getting in or out of the car. It is like a Lazy Susan so you can spin on. Even with all these in place, I still cannot sit for long periods of time ~20 minutes 30 on a good day. He is stating that with the proper coaching I could sit longer with a lumbar support. I explained to him that my work has us take training yearly on ergonomically work station sitting. I have been ergonomically trained on a yearly basis about proper sitting at the work station and I use a lumbar support. He did not include this information in his notes that I had given him. In his report he states that he does not think that the physical therapy exercises, that I explained to him, help. Yet at our consult he did not mention that to me or offer any advice to the contrary. I believe the P.T. program is stretching/exercises my back muscles, but do not stabilize my lumbar section, which I had stated to Dr. Heyman, which is not in his report either. My P.T. is working with me to help strengthen the muscle in my back in hopes it will stabilize my vertebra. Again, I told this to Dr. Heyman which is also is not in his report.

Confidential
Admin Rec. 00469

Page 4 Question 3

- A lift inside or outside the shoe will deflexed my Achilles tendon, which will hurt and it in turn, aggravate my back. The cam boot had this effect, which was stated to Dr. Heyman. I already favor my right side and to have this lift in place would only make matters worse. He never talked to me about this at the time or I could have explained this to him concerning my foot.

Page 4 Question 4

- I already had in place, at work, the lumbar support Dr. Heyman refers to along with frequent walking and stretching. I explained to him I did sit for long periods of time using a lumbar support. I would get up a few times daily due to my back and leg to walk and stretch, yet I just pushed through taking Ibuprofen and Tylenol during the course of the day. It came to a point that the Ibuprofen I would take during the day was not helping my pain. I had to stand and stretch much more frequently which I did for most of the summer and I still had back problems. The same is true at home. My daily regimen consists of frequent switches between sitting, walking and stretching. Those comments are not in his report.

Page 4 Question 5

- Dr. Heyman failed to realize that during physical therapy, I do not wear the cam boot, which I told him was the case, this did not make it into the report either. Putting in a heel pad would cause more pain to my Achilles causing it to flex in the wrong direction (toes down), which I expressed to him causes great pain. Flexing in the opposite direction (toes up) does not cause pain. How do you drive if you cannot flex down for any extended length of time before it becomes a safety hazard? I explained to Dr. Heyman, in detail, the exercises for my Achilles, but he stated in his report that they "are not indicated." That was left out of the report also. I also explained the exercises for my back, which are difficult, but he does not believe they strengthen my back.

Page 5 Question 5 Cont'd

- Again, Dr. Heyman forgot that I told him of the lumbar pillow/support used at home, work and in the car and yet I still experience back pain. Yet it is on his report as a recommendation, but I had told him I already do this.

Experiences during the IME that were not recorded:

- During the physical examination, Dr. Heyman asked me to bend and touch my toes. I was apprehensive knowing that I can't and in trying to do so put me in jeopardy of more back pain. With his hand on my lumbar section, I bent forward and stopped and stated at the point when I could not go any further due to the pain. At the same time I stopped, Dr. Heyman said that that was enough, realizing/feeling the change in my back.
- I stated that all the muscle strengthening so far still has not stabilized my spine. I feel my back problems to be nerve related due to structural damage.

Confidential
Admin Rec. 00470

- I conveyed to Dr. Heyman the toll this has taken on me physically and emotionally. I stated that this has caused me to realize that my back and probably my Achilles will not get better and that this is the best it will be. Accepting this is hard, because I was such an active person with a large family, relying on others to do tasks for me caused me to be depressed and anxious for the future of my wife and children. As a result, I have sought the help of a psychiatrist. Time is of the essence, as my short term disability runs out in a month. My future is in question. Will I ever work at the job I love? Will I be terminated? How will I provide for my wife and children? Will I be approved for long term disability? These and many other unanswered questions have me more than worried – a behavior that is not me. Friends, neighbors and family see me as a different person than a year ago.

- During the first few minutes of the IME, Dr. Heyman quoted a renowned orthopedic about back pain/injury. He said and I paraphrase "America spends too much time, resources and money on back injuries and that people should not do what causes them to have back pain, and that the money spent on curing it was wasteful." To that I said I agree people should not get themselves into position that would cause them back pain, but as for the rest I could not agree. It had set an eerie atmosphere for the rest of the examination. I thought maybe he would not take to heart this philosophy and include me in this generalization, but treat me on an individual basis as no two patients are the same. Does his statement to me about the back injuries and the waste of time and money mean he already had a preconceived notation of me? Not based on me personally, but grouping me in with the masses?

- As an update since the IME, I have received my first epidural block injection on 01/26/09. They said it could take up to 72 hours to take effect. That has not happened and they will prescribe pain medication until my next appointment on 02/09/09.

- Lastly, my experience with those in charge of my care has been exceptional. This includes the orthopedic surgeon, the physical therapist and the Reed Group. I am grateful for the support, help and encouragement all these people have expressed to me.

If you have any questions, please call me and I will be glad to answer any questions.

Sincerely,

Ralph Van Deventer

cc: Dr. Stouse
Heartland Rehabilitation

Confidential
Admin Rec. 00471

Confidential
Admin Rec 00472

FROM : A-Z VIDEO FAX NO. : 7322704287 Jan. 30 2009 02:37PM P1

WHOEVER HEARS MY WORD AND BELIEVES HIM WHO SENT ME HAS ETERNAL LIFE John 5:24

Ralph R. Van Deventer
[redacted]

DATE

PAY TO THE ORDER OF VOID $

DOLLARS

WACHOVIA
WACHOVIA BANK, NA
NEW JERSEY

Jesus Knows Me This I Love

FOR

⑆0?1?000?5⑆1000085150495⑈ 8055

received on 1/30/2009 12:53:58 PM [Eastern Standard Time]

FROM : A-Z VIDEO          FAX NO. : 7322704287          Jan. 30 2009 02:37PM  P2

 

## REIMBURSEMENT AGREEMENT
Johnson & Johnson Long Term Disability Plan

## EMPLOYEE STATEMENT

| Name: Ralph R. Van Deventer Jr. | Social Security Number: | Date of Birth: |
|---|---|---|

| Address - Street: 905 Forge Lane | City: Toms River | State: NJ | Zip Code: 08753 |
|---|---|---|---|

| Home Telephone Number: 732-270-2897 | Employee's Home E-mail Address (if available): |
|---|---|

I am familiar with and understand the provisions of the Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Companies (the "Plan") that require that monthly payments to me will be reduced by certain amounts, such as Social Security and Workers' Compensation benefits. I understand that these reductions may sometimes be based on a reasonable estimate of the amount of other benefits that will be paid to me. I agree to these reductions.

I further understand and agree that I am required to repay the Plan for any overpayments that have been made to me, including, without limitation, payments that have not been offset (or offset fully) for retroactive awards of Social Security, Workers' Compensation or other relevant benefits under the terms of the Plan and that I am required to pay the Plan any amounts that I recover from a third party in connection with my disability to the extent provided under the terms of the Plan. I agree to make these payments promptly, in accordance with the terms of the Plan. I understand and agree to the terms of the Plan regarding other rights of the Plan to recover amounts through subrogation and third party reimbursement.

I further agree to notify the Reed Group immediately upon my receiving notice that I have or will receive any amounts that offset my benefits under the Plan or any amounts that oblige me to pay or repay any amount to the Plan.

| Employee's Signature: | Date: 01/28/09 |
|---|---|

| Witness Signature: Maryann Van Deventer | Date: 01/28/09 |
|---|---|

## Please Fax to 518-880-6610 or Mail to the Address Listed Below

received on 1/30/2009 12:53:58 PM [Eastern Standard Time]

Confidential
Admin Rec. 00473

FROM : A-Z VIDEO                    FAX NO. : 7322704287              Jan. 30 2009 02:38PM   P3

 **ReedGroup**

## Social Security Administration
### Consent for Release of Information  OMB No 0960-0566

TO: Social Security Administration

Name (Please Print): Ralph Robert Van Deventer Jr.

Date of Birth: 11/19/58       Social Security Number:

I authorize the Social Security Administration to release information or records about me to:

NAME                    ADDRESS
Allsup, Inc. (Allsup)                                                      300 Allsup
Pl., Belleville, IL 62223

I want this information released because:

Reed Group has requested this information from me through Allsup. In this regard, I authorize Allsup to provide any information obtained as a result of this Consent for Release of Information to Reed Group and/or its designees. This authorization is in addition to any other authorization I have provided or may provide in the future.

Please release the following information:

　NA　 Social Security Number
　NA　 Identifying information (includes date and place of birth, parents' names)
　X　 Monthly Social Security benefit amount and date of entitlement or NIF
　NA　 Monthly Supplemental Security Income payment amount
　NA　 Information about benefit/payments I received from _ to _
　NA　 Information about my Medicare claim/coverage from _ to_
　(specify)_____
　NA　 Medical records
　NA　 Record(s) from my file (specify)_____
　X　 Other (specify): FACT Query for Primary and/or dependent(s)

I am the individual to whom the information/record applies or that person's parent (if a minor) or legal guardian. I know that if I make any representation which I know is false to obtain information from Social Security records, I could be punished by fine or imprisonment or both.

Signature:

Date: 01/28/09     Relationship: Self.

## Please Fax to 518-880-6610 or Mail to the Address Listed Below

SSA-3288 Internet (12/99)

Confidential
Admin Rec. 00474

FROM : A-Z VIDEO           FAX NO. : 7322704287           Jan. 30 2009 02:33PM P1

TO: Christina Teta                                                    01/29/09

Fax:   518-880-6610                                    # of pages : 8

From:  Ralph Van Deventer
       732-270-2897

re:  LTD forms for case # 74518.

Christina,
       Here are the forms you needed returned to your office.
   I will also mail the originals to you; in the mean time
   this will allow you to begin the processing of these. Any
   questions, please call me.

                              Thanks
                              Ralph Van Deventer

Confidential
Admin Rec. 00475

FROM : A-Z VIDEO                    FAX NO. : 7322704287           Jan. 30 2009 02:33PM  P2

 

## APPLICATION FOR DISABILITY BENEFITS

| TO BE COMPLETED BY EMPLOYEE | PLEASE TYPE OR PRINT CLEARLY | ANSWER ALL QUESTIONS |
|---|---|---|

**1. EMPLOYEE FULL NAME (Last, First, Middle Initial)**
Van Deventer J. Ralph R.

**2. Social Security Number**
████████████

**3. Address (City, State, Zip Code)**
████████████

**4. Phone Number (Area Code)**
████████████

| 5. Date of Birth | 6. Height | 7. Weight | 8. Gender | 9. Marital Status | 10. Spouse's Date of Birth | 11. Is Spouse Employed? |
|---|---|---|---|---|---|---|
| Mo  Day  Yr<br>11-19-58 | 6 | 215 | ☑M<br>☐F | ☐ single  ☑ married<br>☐ widowed ☐ divorced | Mo 02  Day 19  Yr 65<br>First Name Maryanne | ☐ Yes<br>☑ No |

| 12. Number of Children | 13. List names with dates of birth for unmarried children who have not finished high school: |
|---|---|
| 4 | Evan J. VanDeventer 04-03-93    Bryce D. VanDeventer 05-18-02<br>Riley E. Van Deventer 12-12-99    Lily V. Van Deventer 12-12-03 |

### PART I -- INFORMATION ABOUT YOUR CONDITION

**14. What is your disabling condition? (Briefly describe the injury or illness that prevents, or has prevented, you from working.)**
① Lower chronic back pain in the lumbar section that is accompanied by sciatic pain.
② Mid-upper back pain
③ Left achilles tenosynovitis

| 15. Is your injury or illness related to or caused by your work in any way?   1. NO   2. Yes   3. NO | ☑ Yes | ☐ No |
|---|---|---|

| 1. On what date did your condition first bother you:    Month JAN  Day    Year 1979 | | |
|---|---|---|
| 2A. Did you work after the date shown in item 1? (If "No," go to items 3A and 3B) | ☑ Yes | ☐ No |
| 2B. If you did work since the date in item 1, did your condition cause you to change: | | |
| Your job or job duties? | ☐ Yes | ☑ No |
| Your hours of work? | ☐ Yes | ☑ No |
| Your attendance? | ☑ Yes | ☐ No |
| Anything else about your work? | ☑ Yes | ☐ No |

Duties remained the same, but carried them out differently. Frequent switching between sitting, walking and stretching. Multiple breaks
(If you answered "No" to all items under 2B, go to items 3A and 3B.)

**2C. If you answered "Yes" to any item in 2B, explain below what the changes in your work circumstances were, the dates they occurred, and how your condition made these changes necessary.**
Sedentary job (desk job) caused me to sit for long periods of time. Due to my back injury I had to frequently set-up, walk around, "pop" my spine back in place and stretch to help get through the day. This progressed over the years, but was especially more difficult since May 2008. For the past several years I had to take time off to attend/rest my back due to the pain experienced. My left achilles also makes it hard to stand/walk.

| 3A. On what date did your condition finally make you stop working?    Month 9  Day 8  Year 08 | | |
|---|---|---|

**3B. Explain how your condition now keeps you from working.** Between my back pain and my achilles pain it is hard to maneuver. When I sit too long (20min) my back pain/sciatic is hit and my achilles becomes stiff with a burning sensation in my calf. When I stand/walk for too long (15min) my back pain is great. This has caused me to constantly switch between the two (sitting/walking) to help keep the pain less.

Confidential
Admin Rec. 00476

FROM : A-Z VIDEO　　　　　　FAX NO. : 7322704287　　　Jan. 30 2009 02:34PM P3

**ReedGroup**
www.reiq.net

Describe the kind and amount of physical activity this job involved during a typical day in terms of:

- Walking (circle the number of hours a day spent walking)　　0　1 ②　3　4　5　6　7　8
- Standing (circle the number of hours a day spent standing)　0 ① 2　3　4　5　6　7　8
- Sitting (circle the number of hours a day spent sitting)　　0　1　2　3　4　5 ⑥ 7　8
- Bending (circle how often a day you had to bend)　Never • Occasionally • ⟨Frequently⟩ • Constantly
- Reaching (circle how often a day you had to reach)　Never • Occasionally • ⟨Frequently⟩ • Constantly
- Lifting and Carrying (describe below what was lifted, and far it was carried; check heaviest weight lifted, and weight frequently lifted and/or carried):

| HEAVIEST WEIGHT LIFTED | WEIGHT FREQUENTLY LIFTED/CARRIED |
|---|---|
| ☐ 10 lbs. | ☐ 10 lbs. |
| ☐ 20 lbs. | ☐ 20 lbs. |
| ☒ 50 lbs. | ☒ 50 lbs. |
| ☐ 100 lbs. | ☐ 100 lbs. |
| ☐ Over 100 lbs. | ☐ Over 100 lbs. |

Have you been hospitalized or treated at a clinic for your disabling condition?　☐ Yes　☒ No
If "Yes," show the following and give dates of confinement:

| Name of Hospital or Clinic: | Address: | Dates of Confinement: |
|---|---|---|
| | | |

| Names and addresses of any physicians consulted: | Dates Consulted: |
|---|---|
| | |

## PART II – INFORMATION ABOUT OTHER INCOME

Are you receiving any income benefits?　☐ Yes　☒ No
If "Yes," check applicable box or boxes below and provide detail.

☐ Disability Benefit　　　　　☐ Federal Social Security, Railroad Retirement Act, Veterans Administration, any Federal,
☐ Pension Plan　　　　　　　State, or other Government Agency Benefits or Employer's Liability Law Benefits
☐ Worker's Compensation　　☐ Other
☐ Sick Leave

| Source of Benefits | Monthly Amount | Commencement Date of Payments | Termination of Payments |
|---|---|---|---|
| | | | |

## PART III – INFORMATION ABOUT YOUR EDUCATION

1. What is the highest grade of school that you completed and when?
   Associate's Degree 1985

2. Have you gone to trade or vocational school or had any type of special training?　☐ Yes　☒ No
   If "Yes," show:
   - The type of trade or vocational school or training: _____
   - Approximate dates you attended: _____
   - How this schooling or training was used in any work you did: _____

| Employee Full Name | WWID # |
|---|---|
| Ralph Robert Van Deventer Jr. | 10900 |

received on 1/30/2009 12:49:55 PM [Eastern Standard Time]e | 2ⁿᵈ Floor, Suite 3 | East Greenbush, NY 12061| 866-829-8861 | Fax: 518-880-6610

Confidential
Admin Rec. 00477

**ReedGroup**

**PART IV — INFORMATION ABOUT THE WORK YOU DID**

1. List all jobs you have had in the last 15 years before you stopped working, beginning with your current job. Normally, this will be the kind of work you did the longest. (If you have a 8th grade education or less, AND did only heavy unskilled labor for 35 years or more, list all of the jobs you have had since you began to work. Use a separate sheet as necessary and attach it to this form.)

| Job Title (Be sure to begin with your "current" job) | Type of Business | Date Worked (Month and Year) From | To | Days per Week | Rate of Pay (Per hour, day, week, month or year) |
|---|---|---|---|---|---|
| Sr. QA Analyst | Medical Device | 4/89 | Present | 5 | $79,000 /year |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

2. Provide the following information for your usual job shown in item 1, line 1:
   In your job, did you:

   o  use machines, tools, or equipment of any kind?        ☑ Yes ☐ No
   o  use technical knowledge or skills?                    ☑ Yes ☐ No
   o  do any writing, complete reports, or perform similar duties?  ☑ Yes ☐ No
   o  have supervisory responsibilities?                    ☐ Yes ☑ No

Describe your daily activities in the following areas, and state what and how much you do of each and how often you do it:

   o  Household maintenance (including cooking, cleaning, shopping, and odd jobs around the house, as well as any other similar activities):
      Cook breakfast (toast/oatmeal) for the children. No odd jobs or cleaning around the house.

   o  Recreational activities and hobbies (hunting, fishing, bowling, hiking, musical instruments, etc.):
      None

   o  Social contacts (visits with friends, relatives, neighbors):
      Friends and relatives visit at my home.

   o  Other (drive car, motorcycle, ride bus, etc.):
      Drive approximately 4 miles /day to drop off children at school.

I hereby authorize all physicians and health care professionals, hospitals and other healthcare institutions, insurers, employers, and group policy holders: You are authorized to provide Reed Group, 15 Tech Valley Drive East Greenbush, NY 12061, acting on my employer's behalf, with information concerning my health care, history, examination, treatment (including but not limited to copies of my medical record), advice, and supplies provided to me, and any employment-related information regarding my primary and/or secondary diagnoses as they relate to my disability benefits. This information will be used to evaluate and administer my application for disability benefits and may be reviewed by authorized medical and/or human resources professionals affiliated with my employer. I understand that this authorization is valid until I submit written revocation to my employer or Reed Group, I hereby release any person or entity providing information from any and all liability for furnishing such information. I agree that a photographic or facsimile copy of this authorization is as valid as the original.

Employee's Signature                              Date  01/28/09

Employee Full Name  Ralph Robert Van Deventer Jr.   WWID #  10900

Form #G-2009

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, NY 12061| 866-829-8861 | Fax: 518-880-6610

received on 1/30/2009 12:49:55 PM [Eastern Standard Time]

Confidential
Admin Rec. 00478

FROM : A-Z VIDEO                    FAX NO. : 7322704287              Jan. 30 2009 02:35PM  P5

 

## Direct Deposit Enrollment Form

To enroll or stop in Full Service Direct Deposit, simply fill out this form and **mail** or **fax** it to Reed Group at 518-880-6610. Also, when enrolling, **please also attach a voided check** – not a deposit slip. If depositing to a savings account, ask your bank to give you the Routing/Transit Number for your account. It isn't always the same as the number on a savings deposit slip. This will help ensure that you are paid correctly.

Below is a sample check MICR line, detailing where the information necessary to complete this form can be found.

| Routing/Transit # (A 9-digit number always between these two marks) | Checking Account # | Check # (this number matches the number in the upper right corner of the check— not needed for sign-up) |
|---|---|---|

**Important! Please read and sign before completing and submitting.**

I hereby authorize RGL to deposit any amounts owed me, by initiating credit entries to my account at the financial institution (hereinafter "Bank") indicated on this form. Further, I authorize Bank to accept and to credit and credit entries indicated by RGL to my account. In the event that RGL deposits funds erroneously into my account, I authorize RGL to debit my account for an amount not to exceed the original amount of the erroneous credit.

This authorization is to remain in full force and effect until RGL and Bank have received written notice from me of its termination in such time and such manner as to afford RGL and Bank reasonable opportunity to act on it.

Name: _Ralph Robert Van Deventer Jr._      Social Security # ▓▓▓▓▓▓▓

Signature: _Ralph R Van Deventer_      Date: _01/28/09_

1. **Election** (Must Select One):   ☒ Start Direct Deposit     ☐ Stop Direct Deposit     ☐ Change Account

2. **Account Information**

   1. Bank Name/City/State: _Wachovia / Toms River / New Jersey_

   2. Account #: _10000851 50495_

   3. Type of Account: ☒ Checking   ☐ Savings   ☐ Other

   4. Routing/ Transit #: _021200025_

### Please Mail to the Address Listed Below or Fax to 518-880-6610

received on 1/30/2009 12:49:55 PM [Eastern Standard Time]

Confidential
Admin Rec. 00479

01/28/2009  14:24     7325711937                STROUSE/LOPANO                         PAGE  01

 

## Release to Work Form

**Instructions:** Prior to returning to work from a Short Term Disability (STD) Leave with **temporary restrictions,** you **MUST** fax this form to Reed Group at 518-880-6610 for approval.

If you have any questions, please call 866-829-8861

**Part I - To be completed by Employee**

| Employee Name: (Please Print) | Worldwide ID #: |
|---|---|
| Ralph R. Van Deventer Jr. | 10900 |

**Part II - To be completed by Medical Provider - Please do NOT list diagnosis or nature of illness/injury**

I certify that this employee is medically fit to return to work on (date): ____2/2/09____

The employee's medical condition ☒ **will** (Please complete Part III) OR ☐ **will not** (skip to Part V) continue to impact his/her ability to perform all of the regular functions of his/her position.

If temporary accommodation(s) are necessary, the projected full duty release is (date): _____

**Part III - Abilities - To be completed by Medical Provider**

| Identify appropriate work level for employee's condition: | ACTIVITY | NONE | OCCASIONALLY (1 to 3 hours) | FREQUENTLY (3 to 6 hours) | CONTINUOUSLY (6 + Hours) |
|---|---|---|---|---|---|
| ☒ **SEDENTARY WORK** – Sitting most of the time; brief periods walk/stand; lift up to 10 lbs. occasionally | Stand/Walk | ☐ | ☒ | ☐ | ☐ |
| | Sit | ☐ | ☐ | ☒ | ☐ |
| | Drive | ☐ | ☒ | ☐ | ☐ |
| ☐ **LIGHT WORK** – Significant degree of walking/standing; some sitting; lift - up to 20 lbs. occasionally | Bend | ☐ | ☒ | ☐ | ☐ |
| | Twist | ☒ | | ☐ | ☐ |
| ☐ **MEDIUM WORK** – Lift up to 50 lbs. occasionally; 20 lbs. frequently; 10 lbs. constantly | Squat | ☒ | | ☐ | ☐ |
| | Climb | ☒ | ☐ | ☐ | ☐ |
| ☐ **HEAVY WORK** – Lift up to 100 lbs. occasionally; 50 lbs. frequently; 20 lbs. constantly | Grasp | ☐ | ☐ | ☒ | ☐ |
| | Push/Pull | ☐ | ☒ | ☐ | ☐ |
| ☐ **VERY HEAVY WORK** – lifting in excess of 100 lbs. occasionally; 50 lbs. frequently; 20 lbs. constantly | Reach | ☐ | ☒ | ☐ | ☐ |

**Part IV - Temporary Restrictions**

This employee may return to work with the following temporary restrictions:

| RESTRICTION | DATE RESTRICTION BEGINS | DATE RESTRICTION ENDS |
|---|---|---|
| le above | | |
| 3 - 4 hours of work at home | | |

RTW Form – Page 1 of 2

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, New York 12061 | 866-829-8861 | Fax: 518-880-6610

received on 1/28/2009 2:22:33 PM [Eastern Standard Time]

Confidential
Admin Rec. 00480

01/28/2009  14:24    7325711937           STROUSE/LOPAND                    PAGE   02

**Part V - Safe Operation** of a Company Vehicle (to be completed by Health Care Provider, if applicable)
Individuals who operate a company vehicle (Sales Representative, forklift operators, etc.) are considered to be in a Safety Sensitive position. I the above named individual is required to operate a company vehicle as part of their responsibilities, please complete this section.

**Please check one:**

_____ The above named individual's medical condition/status <u>does not interfere</u> with his/her ability to operate a company vehicle.

__X__ The above named individual's medical condition/status <u>does not interfere</u> with his/her ability to operate a company vehicle <u>with the accommodations/ restrictions described below</u>

_____ The above named individual's medical condition/status <u>does interfere</u> with his/her ability to drive and cannot operate a company vehicle at this time.

Accommodations/Restrictions including duration:
Drive  1/2 Hour at a Time

**Part VI - Use of Fitness Center**

Use of the Fitness Center  Johnson & Johnson sponsors a health promotion program for employees. One component of this program is an exercise program that includes aerobic, strength and/or flexibility training.

1. This employee may participate in aerobic, strength and flexibility training without restrictions:

[ ] YES       [X] NO, then please complete next statement

2. This employee may participate in aerobic, strength and flexibility training with the following restrictions:
No heavy lifting
No running

**Part VII - Medical Provider Information**

| Attending Physician's Name: (Please Print) | Attending Physician's Phone Number: ___ |
| Attending Physician's Signature: | Date: 1/28/09 |

## Please fax to 518-880-6610 when complete

RTW Form – Page 2 of 2

Reed Group | 15 Tech Valley Drive | 2nd Floor, Suite 3 | East Greenbush, New York 12061 | 866-829-8881 | Fax: 518-880-6610

received on 1/28/2009 2:22:33 PM [Eastern Standard Time]

Confidential
Admin Rec. 00481

**RALPH VANDE\ ENTER**

**DOB** ▓▓▓▓▓▓▓

**1-27-09**

**HISTORY:**  Patie: it is much improved as far as the Achilles tendon is concerned. The lump is markedly n duced in size. He seems to have less tenderness and better strength. He can wean himse f out of the walking boot. As far as his back is concerned, he has seen the pain manageme it specialist and has had one epidural block. Another is scheduled for two weeks. There i: no change in his neurologic status. He does appear to be able to work limited duty for apj roximately four hours per day.

**RETURN:**  1 mo1 th

**IDS:pb**

Confidential
Admin Rec. 00482